**Jackie RIMMER, Appellant,**

v.

**The FAYETTEVILLE POLICE DEPT., Appellee.**

**No. 75–1913.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 13, 1977.

Decided Dec. 20, 1977.

---

274

John Boddie, Third Year Law Student (Barry Nakell, University of North Carolina School of Law, Chapel Hill, N. C., on brief), for appellant.

Jacob L. Safron, Sp. Deputy Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., Raleigh, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and WYZANSKI *, Senior District Judge.

HAYNSWORTH, Chief Judge:

Rimmer filed an action under 42 U.S.C.A. § 1983 seeking damages and injunctive relief for an alleged denial of constitutional rights during the course of a trial on criminal charges in a state court. At the time of filing he had not completed exhaustion of his state court remedies, but he did complete exhaustion of those remedies after the district court dismissed this complaint. The state court judgment of conviction, however, still stands unreversed and unvacated. We conclude that the doctrine of collateral estoppel [1] forecloses assertion of Rimmer's claims and that the district court properly dismissed the complaint.

Rimmer was involved in collisions with two other automobiles in which personal injuries and property damage were suffered. Rimmer fled the scene. A security guard, employed in a nearby establishment, gave chase, but Rimmer evaded him after striking the guard and cutting him with a knife.

Several days later, Rimmer went to the police station to reclaim his automobile. The security guard was present and identi-

---

* For the District of Massachusetts, Sitting by Designation.

1. We use the term "collateral estoppel" to denote the doctrine described as "issue preclu- sion" in the Restatement (Second) of Judgments § 68, Comment b (Tent. Draft No. 1, 1973), and thus to also include the less common term of "direct estoppel."

fied Rimmer as the fleeing driver he had chased. At the criminal trial on the charges of fleeing the scene of the collision without having given aid to the injured, the security guard identified Rimmer as the fleeing motorist. Rimmer had objected to the testimony of the guard as the product of an impermissibly suggestive confrontation, the meeting in the police station. His objection was overruled, and that action of the trial judge was affirmed by the North Carolina Court of Appeals.[2] The Supreme Court of North Carolina denied *certiorari*.[3]

On the same day Rimmer filed his petition for a writ of *certiorari* in the Supreme Court of North Carolina, he filed this action under § 1983 seeking damages and a mandatory injunction to require the defendants to seek habeas corpus relief in Rimmer's behalf. The sole basis of the claim was that he suffered a federal constitutional deprivation when the state court received the identification testimony of the security guard. Though it is clear that he claimed that the conviction was invalid, he did not seek release on a writ of habeas corpus.

### I.

Since it was clear that Rimmer was claiming that his conviction was invalid, the district court might have treated the complaint as one for habeas relief as well as a complaint for damages under § 1983, but it did not. In any event, however, the district court is not to be faulted for what it did. At the time of filing and of the prompt dismissal, Rimmer had not exhausted his state remedies, and, on that account, appears to have studiously avoided requesting habeas relief. Moreover, even if the district court had treated the complaint as implicitly requesting such relief, it would have been subject to dismissal because the

state court remedies had not then been exhausted.

### II.

When an action under the Civil Rights Act calls into question the validity of the state court conviction, it so closely resembles an action for a federal writ of habeas corpus that a requirement of exhaustion of available state remedies may seem reasonable. Some courts have imposed such a requirement where, as here, the judgment in the civil rights case will necessarily determine the validity or invalidity of the state court conviction.[4]

If there is a requirement of exhaustion of available state remedies in such cases, it runs counter to the general intention of the Congress in 1871 in enacting the Civil Rights Act. That Congress was distrustful of state courts in lending protection to civil rights and wished to provide alternative federal remedies.[5] *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), involving challenges to the conduct of prison officials, suggest there is no requirement of exhaustion of state remedies, even when actions bring into question regulations and practices of substantial interest to the state. One might infer from those decisions a likelihood that the Supreme Court would not burden a civil rights action with a state court remedies exhaustion requirement, even in a case such as this where the validity of the state court conviction is called into question.

On the other hand, a much later congress, when enacting what is now 28 U.S.C.A. § 2254, explicitly imposed an exhaustion of state remedies requirement before federal habeas corpus relief may be sought. If a

---

2. *State v. Rimmer,* 25 N.C.App. 637, 214 S.E.2d 225 (1975).

3. *State v. Rimmer,* 288 N.C. 250, 217 S.E.2d 674 (1975).

4. *Guerro v. Mulhearn,* 498 F.2d 1249 (1st Cir. 1974); *Mastracchio v. Ricci,* 498 F.2d 1257 (1st Cir. 1974); *cert. denied,* 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975); *Fulford v. Klein,*

529 F.2d 377 (5th Cir. 1976), *aff'd en banc,* 550 F.2d 342 (5th Cir. 1977); *Meadows v. Evans,* 529 F.2d 385 (5th Cir. 1976), *aff'd en banc,* 550 F.2d 345 (5th Cir. 1977); *Watson v. Briscoe,* 554 F.2d 650 (5th Cir. 1977).

5. *See Mitchum v. Foster,* 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

state prisoner is to languish in prison while exhausting his state judicial remedies before he has access to a federal court for habeas relief, there would seem to be little reason not to put him through the same process when he challenges the validity of his state court conviction though he seeks only a money award rather than a writ of habeas corpus.

■ We need not answer the question of exhaustion of state remedies, however, for here, even if state remedies had been exhausted at the time of filing, the court would be required to hold, as it did, that the issue was precluded by the standing state court conviction.

### III.

As noted above, Rimmer fully litigated the question he now tenders in the course of his criminal trial and subsequent appellate review. He consistently lost under circumstances in which his very freedom turned upon the question of a violation of his constitutional rights.

■ Over eleven years ago in *Moore v. United States*, 360 F.2d 353 (4th Cir. 1966), we held that a taxpayer convicted of tax fraud could not relitigate the question of his fraud in a subsequent civil suit for the collection of fraud penalties for the same years which were involved in the criminal prosecution. There is nothing new in the concept that full litigation of an issue in a criminal proceeding forecloses subsequent relitigation of the issue in a civil proceeding when resolution of the issue was essential to the conviction.

With one caveat to be mentioned, the fact that Rimmer's subsequent civil action was brought under the Civil Rights Act warrants no departure from the general rule. We readily adopt the reasoning of the First Circuit in *Mastracchio v. Ricci,* 498 F.2d 1257 (1974), and of Judge Tjoflat in Part IV of his opinion dissenting in part in *Meadows v. Evans,* 550 F.2d 345 (5th Cir. 1977). There is no need here to repeat what has been persuasively said there.

Judge Tjoflat wrote for himself and three others in dissent, while Judge Ainsworth, in a separate opinion, expressed agreement with him. The majority of the judges in the Fifth Circuit, however, did not address the question. It simply summarily affirmed a panel decision holding that exhaustion of state remedies was requisite. There is substantial unanimity among the cases holding the rules of issue preclusion to be applicable in civil rights cases. Indeed, the Supreme Court has implied that the "normal principles of *res judicata* would apply." [6]

Nor do we see any practical problem in the application of the rule in this context as long as the state prisoner-plaintiff has, or has had, access to a federal forum for the determination of his federal constitutional claims. Most state court prisoners do have such a right of access through 28 U.S.C.A. § 2254, but there are exceptions. Under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), state court prisoners complaining of searches and seizures would usually have no such access to a federal forum. Others may be unable to meet the "in custody" requirement of § 2254, and never could have met it. Application of the rule of preclusion by reason of a state court conviction in those cases, therefore, may deny a state court prisoner access to a federal forum entirely. Since it was the general intention of the Civil Rights Act to provide access to a federal forum for the adjudication of federal constitutional rights, the Civil Rights Act itself may present a bar to foreclosure of the issue in those cases. This problem has been noted by others, including Judge Goldberg in his separate opinion in *Meadows v. Evans,* 550 F.2d 345 (5th Cir. 1977); by Judge Coffin in *Mastracchio v. Ricci,* 498 F.2d 1257, 1260 n. 2 (1st Cir. 1974); by Judge Merhige in *Moran v. Mitchell,* 354 F.Supp. 86 (E.D.Va. 1973).

■ When, after exhaustion of state court remedies, a prisoner succeeds in an action under § 2254, he is the ultimate

---

6. *Wolff v. McDonnell,* 418 U.S. 539, 554 n. 12, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).

victor. While the state court judgment is neither reversed nor vacated, the prisoner is released and the state court judgment authoritatively declared void. Thereafter, the state court judgment should have no preclusive effect. The problem we foresee exists only in those cases in which there is not and never has been a right of access to a federal forum for adjudication of the federal constitutional question determined in the course of the state court proceedings.

We are not met with the problem in this case, however. As the others who have mentioned it, we are content to notice its presence in some future case and to confine our present holding to those cases in which the state prisoner-plaintiff has or, for a reasonable time, had a right of access to a federal forum for the adjudication of his federal claim.

AFFIRMED.