667 F.2d 1133
 John Franklin PROSISE, Appellant,
v.
Gilbert A. HARING, Lieutenant; Henry W. Allen, Detective; J.
R. Badey, Detective; Alvin Beuchart, Detective;
Thomas Trumble, Officer; and Garber,
Officer, Appellees.
 No. 79-6310.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 2, 1981.
Decided Dec. 30, 1981.
 
 Norman A. Townsend, Alexandria, Va. (Sebastian K. D. Graber, Graber, Stetler & Townsend, Alexandria, Va., on brief), for appellant.
 David R. Lasso, Asst. County Atty., Arlington, Va. (Jerry K. Emrich, Arlington County Atty., Arlington, Va., on brief), for appellees.
 Before WINTER, BUTZNER and PHILLIPS, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Prosise appeals the district court's grant of summary judgment dismissing his claims under 42 U.S.C. § 1983 that Arlington County, Virginia police officers violated his constitutional rights by using excessive force in arresting him and by conducting a search and seizure in violation of the fourth and fourteenth amendments. The district court held that the officers' use of force was reasonable and not excessive under the circumstances and that the search and seizure claim was precluded by Prosise's guilty plea in the related state court criminal prosecution. We affirm the district court's dismissal of the excessive force claim, but we reverse and remand the search and seizure claim for further proceedings because we do not think the state conviction based on a guilty plea should preclude litigation of that claim.
 
 
 2
 * In September 1977, the defendants, County Police Officers Haring, Trumble, Beuchert and Garber, answered a radio call about a domestic disturbance. Arriving at the scene, the officers saw Prosise and a woman, Katherine Denny, at the window of the apartment. Both Prosise and Denny yelled to the officers that the other had a gun, and Prosise held his arm out of the window showing a wound where Denny had stabbed him. Prosise called to the officers that he would let them in if they came up.
 
 
 3
 The officers went up the stairwell and stood outside the door on a landing. They announced themselves and attempted unsuccessfully to open the door. After hearing two gunshots, they drew their guns and tried to kick the door in. At that moment, Prosise-who is six feet four inches tall-opened the door and greeted the officers with two handguns in his left hand. The officers ordered him to back away and drop his weapons. He refused to do so, even when one officer pointed a gun at his chest and repeated the order. Fearing that he might use his weapon, the officers seized him and sought to disarm him by force.
 
 
 4
 A scuffle ensued, during which the officers subdued and disarmed Prosise. He was handcuffed and taken into custody and was later treated at a local hospital for abrasions. Prosise claims that the officers struck him in the cheek with a pistol during the scuffle, while Trumble remembers only that he struck him with his fist in order to disarm him.
 
 
 5
 After Prosise was taken away, Denny told the officers that Prosise was manufacturing drugs and that he kept them in a closet. She led them to a closet and showed them a baggie she said contained "PCP" (phencyclidine or "angel dust") and the substances and devices which she said Prosise used in making PCP.
 
 
 6
 The officers did not seize any of the articles but called Narcotics Detective Allen to the scene. This practice is standard when drugs of this nature are involved because the chemicals are often volatile and can be dangerous. Detective Allen noticed a smell of ether, saw the chemicals in the closet and concluded that these chemicals were probably being used to manufacture PCP. Allen left the two remaining officers to secure the area and went to the magistrate for a search warrant. Allen returned with a search warrant, and the officers searched the apartment, seizing the chemicals and drug paraphernalia.
 
 
 7
 Prosise was later charged in a state prosecution with a count of manufacturing phencyclidine and a count of possession of phencyclidine. He executed a plea agreement wherein he was to plead guilty to the count of manufacturing in return for a nolle prosequi of the count of possession. The Arlington Circuit Court accepted his guilty plea. At the hearing, Detective Allen testified about the search of Prosise's apartment, explaining that a chemist had identified the chemicals seized as being PCP in various stages of manufacture.
 
 
 8
 At sentencing some weeks later, Prosise attempted to withdraw his guilty plea. The court denied Prosise's motion to withdraw the plea and imposed a sentence of fine and imprisonment. The Virginia Supreme Court denied his petition for writ of error challenging the voluntariness of his plea and the refusal of the trial court to permit the withdrawal of the plea. Prosise v. Commonwealth, Record No. 78-1479 (July 17, 1979).
 
 
 9
 Prosise then commenced this action in the United States District Court for the Eastern District of Virginia alleging, under 42 U.S.C. § 1983, a denial of his constitutional rights under color of state law. He claimed, among other things, that the officers had used excessive force during his arrest and had engaged in an illegal search and seizure. The district court dismissed all but these two claims, and the defendants moved for summary judgment as to them.
 
 
 10
 The district court granted summary judgment for the defendants on the excessive force claim, based on the uncontradicted sworn statements of the officers explaining the circumstances of their use of force, and on the fourth amendment claim, on the basis that recovery was precluded by Prosise's guilty plea. This appeal followed.
 
 
 11
 Prosise contends here that his verified complaint sufficiently stated a cause of action under § 1983 for the use of excessive force, and that it was uncontradicted by the defendants' affidavits supporting their motion. The defendants did not deny his allegation that he was "pistol-whipped." At the very least, then, he is entitled to a plenary evidentiary hearing. He further contends that, on the authority of King v. Blankenship, 636 F.2d 70 (4th Cir. 1980), this court should enter summary judgment in his favor.
 
 
 12
 Second, he argues that he is not precluded by his guilty plea from maintaining a § 1983 action against the arresting officers for illegal search and seizure. Under the Supreme Court's decision in Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), holding that the conventional doctrines of collateral estoppel are to be applied to § 1983 claims, he contends that his fourth amendment claim is not precluded because it was not actually litigated in the state criminal action.
 
 II
 
 13
 We consider first Prosise's claim that unconstitutionally excessive force was used in his arrest. Although we agree with Prosise that on the summary judgment record there is a factual dispute as to the exact details of the arrest encounter, we agree with the district court that even on the facts as Prosise alleges them the force used to subdue him was not under the circumstances constitutionally excessive.
 
 
 14
 The rule applied in King v. Blankenship, 636 F.2d 70 (4th Cir. 1980), does not help Prosise. The encounter here alleged was, on Prosise's own account, one quite different from that in King. Prosise, a very large man, held two handguns and refused to drop them on command. There is no suggestion that the officers applied any force subsequent to disarming and subduing him. This situation is simply unlike that in King where force was applied to one safely in custody "maliciously and sadistically for the very purpose of causing harm," id. at 73 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)), but is manifestly one where the officers acted in a reasonable, hence good faith, effort to subdue an armed man who was plainly resisting lawful authority and posing a real threat of harm. We therefore agree with the district court that on the facts as stated in Prosise's verified complaint the defendants were entitled to summary judgment on this claim.
 
 III
 
 15
 The district court held that Prosise was absolutely precluded in respect of his fourth amendment claim on two bases: (1) that, though the question of the search and seizure's legality had not been "fully litigated" in the state criminal action, cf. Rimmer v. Fayetteville Police Dept., 567 F.2d 273 (4th Cir. 1977) (actual litigation results in preclusion), the "plea of guilty estops him" because it "necessarily implied that the search ... was lawful." Prosise v. Haring, et al., C.A. No. 79-105-AM, slip op. at 5, 6 (E.D.Va. April 17, 1979); and (2) that, in any event, under Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and its progeny, the guilty plea had the effect of waiving the antecedent constitutional objection since that objection was neither related to factual guilt or innocence nor to the right of the defendant not to be tried. Prosise, slip op. at 6, 7.
 
 
 16
 * On the waiver basis for decision, we think that the specific waiver principle announced in Tollett properly applies only to subsequent federal habeas corpus proceedings challenging the criminal conviction. As analyzed in Tollett, this principle rests upon the perception that the guilty plea constitutes "a break in the chain of events" in the criminal prosecution, Tollett, 411 U.S. at 267, 93 S.Ct. at 1608, so that any subsequent habeas corpus inquiry is necessarily focused on the constitutional validity of the plea and "not the existence as such of an antecedent constitutional infirmity." Id. at 266, 93 S.Ct. at 1607. This is inapposite to the question whether a § 1983 claim based upon the "antecedent constitutional infirmity" may later be prosecuted free of any preclusive effect. In consequence, we think that whether there should be any preclusive effect is to be determined on the basis of other principles, specifically, of collateral estoppel and the full faith and credit statute, 28 U.S.C. § 1738. To those we now turn.
 
 B
 
 17
 For possible guidance on these questions we withheld decision following original hearing of this appeal and reheard it on supplemental briefs following the Supreme Court's decision in Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), where the general problem of preclusion by collateral estoppel in § 1983 actions was presented. The decision in that case was, however, a narrowly confined one that is not of itself dispositive here. It held only that even though Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), may have deprived a state prisoner of a federal habeas forum to pursue a fourth amendment claim, the conventional doctrine of collateral estoppel and the full faith and credit command of 28 U.S.C. § 1738 might operate by issue preclusion to deprive him as well of the alternative § 1983 forum for pursuing it. McCurry, 449 U.S. at 103-05, 101 S.Ct. at 419-20.
 
 
 18
 Specifically not decided by the McCurry Court was the question "how the body of collateral-estoppel doctrine or 28 U.S.C. § 1738 should apply," id. at 105 n.25, 101 S.Ct. at 420 n.25 (emphasis in original), including the question "whether any exceptions or qualifications within the bounds of (the) doctrine might ultimately defeat a collateral-estoppel defense," id. at 95 n.7, 101 S.Ct. at 415 n.7, in a subsequent § 1983 action. But the Court was at special pains to point out that the collateral estoppel doctrine to be applied is the "conventional doctrine" rather than any "new, more stringent" one, and, most specifically, that it is not one which "turns on the single factor of whether the State gave the federal claimant a full and fair opportunity to litigate (the) federal question." McCurry, 449 U.S. at 95 n.7,[1] 101 S.Ct. at 415 n.7.
 
 
 19
 McCurry essentially, therefore, merely confirmed the general principle that had already been applied in earlier decisions of this court that under appropriate circumstances collateral estoppel might, within traditional bounds, apply to defeat § 1983 constitutional claims because the dispositive issues had earlier been decided adversely to the federal plaintiffs in state criminal actions. See Wiggins v. Murphy, 576 F.2d 572 (4th Cir. 1978) (per curiam) (attempt by § 1983 action to have state convictions expunged on federal grounds); Rimmer v. Fayetteville Police Dept., 567 F.2d 273 (4th Cir. 1977) (sixth amendment claim). To this general confirmation McCurry added only the point-on which we had expressed reservation in Rimmer, 567 F.2d at 276-that this preclusion principle is not displaced with respect to fourth amendment claims by the nonavailability under Stone v. Powell of an alternative federal habeas forum. And it emphasized, to an extent our decisions to date perhaps have not, the primary importance of the command embodied in 28 U.S.C. § 1738 to seek in the law of the judgment state the precise rule of conclusiveness to be applied to its criminal judgment.
 
 
 20
 Not therefore decided by the McCurry Court-indeed not specifically before it on the facts of that case[2]-was the narrow question which we address and to which we expressly confine decision here. That question is whether, and if so under what circumstances, a state court judgment entered on a guilty plea may be preclusive in a federal § 1983 action of an issue which in the state action was not actually litigated and could only have been litigated in relation to the exclusion of evidence on fourth amendment grounds.
 
 
 21
 We note preliminarily that this is a different question than the more inclusive one whether a guilty plea judgment may be preclusive as to any § 1983 issue, and the related one whether it may be preclusive as to an issue that was an essential element of the state crime charged. To answer the narrow question we address is not necessarily to answer either of the others, and we expressly reserve decision on them.
 
 
 22
 It is also obviously a different question from those already authoritatively answered by our decisions in Wiggins v. Murphy, 576 F.2d 572, Rimmer v. Fayetteville Police Dept., 567 F.2d 273, and, most recently, Cramer v. Crutchfield, 648 F.2d 943 (4th Cir. 1981) (per curiam), in each of which we gave issue preclusive effect in § 1983 actions to state judgments of conviction based upon adjudications of guilt rather than guilty pleas.[3] We therefore address it as a question of first impression on which our earlier decisions applying collateral estoppel in § 1983 cases are not dispositive.
 
 
 23
 (1)
 
 
 24
 Under the command of 28 U.S.C. § 1738, see McCurry, 449 U.S. at 97-98 & n.11, 101 S.Ct. at 416 & n.11, we look first to the law of Virginia to determine whether, and to what extent, that state would give preclusive effect to the criminal judgment here in issue.[4]
 
 
 25
 The Virginia decisions to which we have been directed do not yield a definitive answer. None has addressed the precise, narrow question of the preclusive effect of a guilty plea judgment upon issues that in the state criminal prosecution could only have been relevant to determining the admissibility of evidence. On broader questions of the preclusive effect of criminal judgments, the state's highest court stated in 1958 that the general rule in Virginia remained that expressed in 1916 in Supervisors of Tazewell County v. Norfolk & Western Railway Co., 119 Va. 763, 91 S.E. 124 (1916) that
 
 
 26
 a judgment rendered in a criminal prosecution, whether of conviction or acquittal, does not establish in a subsequent civil action the truth of the facts on which it is rendered or constitute a bar to a subsequent civil action based upon the offense on which the party stands convicted or acquitted.
 
 
 27
 Aetna Casualty & Surety Co. v. Czoka, 200 Va. 385, 105 S.E.2d 869, 872 (1958). In Czoka, a person in privity with the civil defendant had pled guilty to an offense that had as an essential element a dispositive issue in the civil action before the court. The plaintiff sought preclusive effect as to this issue from the criminal conviction. Applying the general rule from Tazewell County, the court refused any preclusive effect. The next year this general rule was again recognized, in dictum, as applying to criminal judgments, in Smith v. New Dixie Lines, Inc., 201 Va. 466, 111 S.E.2d 434 (1959) (dictum: party sought to be precluded not party to criminal action nor otherwise bound by criminal judgment). So far as our research discloses, these two decisions remain the most recent pronouncements and applications of Virginia's general rule relating to the preclusive effect of criminal judgments.
 
 
 28
 To this general rule against preclusion, the Virginia courts have apparently applied only one narrow exception. A plaintiff, previously convicted of arson, has been held precluded by the conviction from recovering the proceeds of a fire insurance policy covering the building he was found guilty of burning. Eagle, Star & British Dominions Insurance Co. v. Heller, 149 Va. 82, 89, 140 S.E. 314, 316 (1927). Subsequent decisions, adhering to the general rule, have simply recognized Heller as an exception to it. See Smith v. New Dixie Lines, Inc., 201 Va. 466, 472-73, 111 S.E.2d 434, 438-39 (1959); Aetna Casualty & Surety Co. v. Czoka, 200 Va. 385, 389, 105 S.E.2d 869, 872 (1958).
 
 
 29
 These Virginia decisions seem, therefore, to establish that, except in the narrow context of the arson conviction in Heller, criminal judgments, whether by guilty plea or adjudicated guilt, have no preclusive effect in subsequent civil litigation.[5] Virginia's narrow rule of preclusion as announced in Heller, where conviction was by adjudicated guilt and where the issues precluded were essential elements of the crime charged, does not by necessary implication apply to the preclusive effect of guilty plea judgments upon other issues than those constituting essential elements of the crime. As indicated, that precise question has not, so far as our research discloses, been authoritatively addressed by the Virginia courts.
 
 
 30
 (2)
 
 
 31
 When we look to general principles of collateral estoppel, either as a guide to Virginia's likely view were the precise question presented to its highest court or as an independent source for the proper application of collateral estoppel doctrine to our issue,[6] the answer is again not definitively given.
 
 
 32
 It cannot be found with certainty in the recent Restatement (Second) of Judgments (1980), taking that as perhaps the best possible source for a responsible statement of "conventional doctrine" in this realm. This important secondary authority suggests that as a general proposition criminal judgments based upon guilty pleas can have no collateral estoppel effect as to any issues, because by definition none has been "actually litigated," Restatement (Second) of Judgments § 133, Comment b (1980), a fundamental predicate for issue preclusion in the Restatement's formulation, see id. § 68, Comment e. This general proposition is immediately hedged, however, by the concession that "(a) defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense ... not (as) a matter of issue preclusion ... but (as) a matter of the law of evidence ...," id., § 133 Comment b (emphasis added).
 
 
 33
 This concession is forced by a significant number of decisions,[7] including several by other federal courts of appeals,[8] that have rather routinely found estoppel arising from guilty pleas notwithstanding the lack of actual litigation of the critical issues. With only a few exceptions,[9] these decisions finding preclusion in guilty pleas have concerned issues that represented elements of the crime charged. As to such "element-issues" it can with reason be said-and has been said in various ways-that though not actually litigated they have necessarily been judicially admitted by the plea, so that the criminal defendant is estopped to contest them in subsequent civil litigation. See, e.g., Brazzell v. Adams, 493 F.2d 489, 490 (5th Cir. 1974); Hernandez-Uribe v. United States, 515 F.2d 20, 21 (8th Cir. 1975); Ivers v. United States, 581 F.2d 1362, 1367 (9th Cir. 1978). If this then be conventional-or at least plainly emerging-doctrine respecting element-issue preclusion by guilty plea, the question remains whether it should apply as well to non-element issues, specifically, for our purposes, to the potential but unlitigated issue whether specific evidence of the crime should be suppressed on fourth amendment grounds.
 
 
 34
 (3)
 
 
 35
 Assuming, without deciding, that a state judgment based on a guilty plea should ordinarily[10] have preclusive effect in a later § 1983 action as to all issues representing essential elements of the crime, we do not think it should have preclusive effect as to potential but not actually litigated issues respecting the exclusion of evidence on fourth amendment grounds. There is a critical distinction, grounded in fundamental policies respecting the proper application of collateral estoppel, between the two types of issues. It relates to the assurance that there was adequate incentive in the criminal proceeding fully to litigate the issue sought to be precluded.
 
 
 36
 Whatever the differences among courts and commentators as to the "actually litigated" requirement for issue preclusion, there has been general agreement-to the point of convention-that among the most critical guarantees of fairness in applying collateral estoppel is the guarantee that the party sought to be estopped had not only a full and fair opportunity but an adequate incentive to litigate "to the hilt" the issues in question.[11] See generally Restatement (Second) of Judgments § 68.1(e)(iii), Comment j (1980). With respect to issues representing the very elements of the crime charged, the adequacy of incentive to contest may be thought manifest in relation to any guilty plea. But it is not necessarily manifest with respect to potential but unlitigated issues related to the exclusion of evidence on fourth amendment grounds.[12] A moment's reflection shows why.
 
 
 37
 Despite the most egregious violation of fourth amendment rights, it is quite conceivable that a state criminal defendant has no real incentive to seek suppression of the resulting evidence because the state has so sufficient an amount of untainted evidence that making the effort would in the end be futile and possibly even harmful to the defendant's immediate interests. In that situation, while a guilty plea might be thought, despite the lack of actual litigation, to be properly preclusive of element-issues, we think it should not be preclusive of the search and seizure issue. On the other hand, there is always the possibility that in a particular case a guilty plea has been entered when the only available evidence on critical issues was search and seizure evidence. In that situation, there was obviously as much incentive to litigate the suppression issue as any representing essential elements of the crime, and if preclusion is finally to turn on incentive, it should in that situation result as well for the evidentiary as for the element-issue.
 
 
 38
 This could of course be determined on a case by case basis, with the question whether the one situation or the other was present being addressed in the § 1983 action as one of fact incident to determining the collateral estoppel defense. Cf. Restatement (Second) of Judgments § 68, Comment f (1980) (extrinsic evidence to determine what issues litigated). Fair resolution of this factual question could be expected, however, frequently to be very difficult. Relevant evidence would consist of such state court records of proceedings incident to the guilty plea as might be available and any extrinsic evidence bearing upon the scope of the state's evidence and the defendant's knowledge of it at the critical time. It is of course true that however sparse and ambiguous this evidence might be, the incentive question could and would nevertheless finally be resolved in every case, as are many other difficult issues, through the ultimately decisive leverage of proof burdens.[13] But while the question could always in the end be resolved by the usual processes, many times fairly and occasionally even rather easily, we think that on balance the game is not worth the candle. The question is so likely to be one incapable of fair and expeditious resolution in the run of § 1983 actions that we believe a general rule of non-preclusion should obtain with respect to search and seizure issues in guilty plea cases.
 
 
 39
 Such a rule, we think, is amply justified by those general policies which emphasize the need for judicial flexibility in accommodating conflicting values of finality, fairness, and public confidence in applications of res judicata. See generally Restatement (Second) of Judgments, Ch. 1, Introduction pp. 12-15 (1980); id. § 68.1. It is conformable under 28 U.S.C. § 1738 to Virginia decisions respecting the preclusive effect of its criminal judgments.[14] And it is compatible with our own prior decisions respecting the estoppel effect of state criminal judgments in § 1983 actions.[15]
 
 
 40
 The price exacted by such a flat rule of non-preclusion is the opportunity it affords state prisoners who pled guilty in state courts to litigate for the first time in § 1983 actions search and seizure issues that might have been but were not raised[16] in state criminal actions. Given the obvious disincentive to forego meritorious suppression motions in the criminal action, see McCurry, 449 U.S. at 104 n.23, 101 S.Ct. at 420 n.23, and the subsequent disincentive (however modest some may consider it) to advance frivolous search and seizure claims in the § 1983 action, we think the price not an exorbitant one in terms of judicial resources and the public interest even if there were no countervailing considerations. And there are of course such considerations. First, there is the avoidance by this means of any necessity to devote effort and resources in the § 1983 action to the resolution of a peripheral factual question of incentive that, as indicated, is likely to be difficult and frequently incapable of fair resolution in that collateral setting.
 
 
 41
 More important is the fact that since Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the § 1983 federal forum is the only one available for assertion of this particular constitutional claim. Though the Supreme Court has specifically rejected this as a sufficient reason for blanket disallowance of collateral estoppel in § 1983 actions involving fourth amendment claims, McCurry, 449 U.S. at 102-05, 101 S.Ct. at 419-20, it remains a legitimate reason well within "conventional doctrine"-for systematically disallowing it in the narrow and concededly marginal circumstance for applying collateral estoppel that is created by guilty pleas. See generally Restatement (Second) of Judgments § 88, Comments b and d ; § 68.1(e), Comment g (1980); see also Allen v. McCurry, 449 U.S. at 115, 101 S.Ct. at 425 (Blackmun, J., dissenting) (emphasizing different cast of search and seizure issues in the two proceedings).
 
 IV
 
 42
 For the reasons given in Part III, we reverse and remand for further proceedings consistent with this opinion that portion of the judgment of the district court which dismissed, on waiver and estoppel grounds, Prosise's search and seizure claim. For reasons given in Part II, that portion of the judgment dismissing Prosise's excessive force claim is affirmed.
 
 
 43
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 
 
 
 [1]
 This last point, that collateral estoppel in § 1983 actions cannot be based solely upon the fact that a full and fair opportunity to litigate the federal issue was provided in state court, was made in specific response to the dissent's suggestion that this was the import of the majority opinion. Allen v. McCurry, 449 U.S. at 113 & n.12, 101 S.Ct. at 417 & n.12 (Blackmun, J., dissenting)
 We understand the Court's position to be that a state's failure to provide a full and fair opportunity to litigate the issue might, within the conventional doctrine, avoid an otherwise appropriate application of collateral estoppel, see Restatement (Second) of Judgments § 68.1 (1980), rather than the obverse, that provision of the full and fair opportunity, standing alone, gives rise to collateral estoppel. As the McCurry dissent points out, Allen v. McCurry, 449 U.S. at 113 & n.12, 101 S.Ct. at 417 & n.12, the effect of the latter would be to equate § 1983 collateral estoppel (issue preclusion) with bar (claim preclusion) under which the § 1983 claimant would be precluded from litigating any issue that might have been raised in the state criminal action. The majority flatly disclaimed this as its holding and we are of course bound by that perception.
 
 
 [2]
 In McCurry the state conviction was not based on a guilty plea but resulted from a trial following pre-trial denial of a motion to suppress evidence on fourth amendment grounds
 
 
 [3]
 In both Rimmer and Wiggins the specific constitutional violations charged in the § 1983 actions had been actually litigated in the state criminal trials as defenses or objections necessarily determined adversely to the state defendants. In Cramer the fundamental constitutional violation charged in the § 1983 action-an illegal search and seizure resulting in an alleged malicious prosecution-was not actually litigated at any stage, but as in both Rimmer and Wiggins the state judgment resulted from conviction after a trial. In Cramer we spoke of the defendant's failure to raise the constitutional objection at any stage as a "waive(r)." 648 F.2d at 945. See note 15 infra
 
 
 [4]
 The exact operation of § 1738 and its relationship to general policies of res judicata in the § 1983 context is not wholly clear. The questions have only emerged as potentially important ones with the relatively recent burgeoning of § 1983 litigation. See generally Restatement (Second) of Judgments § 134, Comment d (1980). Prior to the decision in Allen v. McCurry, there was a divergence of views about the relationship between § 1983 and § 1738 among both courts and commentators. See generally Comment, Beyond Custody: Expanding Collateral Review of State Convictions, 14 U.Mich.J. of L.Ref. 465, 486-88 (1981). It may well persist after McCurry. In that decision the Court did not directly address the question of the relationship between the two, but while apparently assuming their congruence, seemed also to suggest primacy for the command embodied in § 1738. See McCurry, 449 U.S. at 94-96, 101 S.Ct. at 414-16. It is generally assumed that the command is to give to the state judgment the same effect-no more and no less-that the state courts would give it. See Restatement (Second) of Judgments § 134, Comment g (1980). In combination these principles of primacy for the state rule and exact enforcement of the state judgment according to its dictate would create a problem if the state rule were found to be at flat odds with "conventional doctrine." We do not face that problem here, since we find both the state rule and general principles of collateral estoppel to be sufficiently uncertain in their application to the particular kind of issue here involved that no choice is forced. In consequence, we can reserve that thorny question for another day
 
 
 [5]
 Virginia's general rule against preclusion by criminal judgments is rested upon the mutuality requirement, see Aetna Casualty & Surety Co. v. Czoka, 200 Va. 385, 105 S.E.2d 868, 872 (1958), a requirement that the Supreme Court of Virginia has recently declined to abandon, at least in cases of attempted "offensive" use. Norfolk & Western Railway Co. v. Bailey Lumber Co., 221 Va. 638, 272 S.E.2d 217 (1980) (citing Aetna Casualty & Surety Co. v. Czoka in support, but recognizing the Heller exception where defensive use was involved)
 
 
 [6]
 See note 4 supra
 
 
 [7]
 These decisions have recently been collected in Vestal, Issue Preclusion and Criminal Prosecutions, 65 Iowa L.Rev. 281 & nn. 122-25 (1980); Vestal, The Restatement (Second) of Judgments: A Modest Dissent, 66 Cornell L.Rev. 464, 478-83 (1981) (hereinafter cited as Modest Dissent ) in the course of that respected commentator's challenge to the Second Restatement 's general position that an essential predicate for collateral estoppel is that the issues shall have been "actually litigated." The existence of these decisions is of course recognized in the Second Restatement, but their results, though conceded to be possibly "correct," are there ascribed to estoppel principles derived from the law of evidence rather than from traditional res judicata doctrine. Id. § 133, Comment b; Reporter's Note, Comments b and c. Many of the cases, however, clearly reveal an assumption that res judicata/collateral estoppel doctrine is being applied. Freed of any "mutuality" and "actually litigated" requirements, collateral estoppel doctrine would of course clearly apply, and Professor Vestal so explains the cases. See Vestal, Modest Dissent, supra at 478-83. For our immediate purposes we have to assume that these decisions constitute elements in the body of "conventional" collateral estoppel doctrine to which McCurry requires our attention, notwithstanding the indications of a lack of scholarly consensus on the exact shape of that doctrine
 
 
 [8]
 Brazzell v. Adams, 493 F.2d 489 (5th Cir. 1974) (§ 1983 action); Nathan v. Tenna Corp., 560 F.2d 761 (7th Cir. 1977) (diversity action); Hernandez-Uribe v. United States, 515 F.2d 20 (8th Cir. 1975) (criminal action); Ivers v. United States, 581 F.2d 1362 (9th Cir. 1978) (federal civil action). All these decisions applied preclusion to issues which represented essential elements of the crime to which a guilty plea had been entered
 
 
 [9]
 See Metros v. United States District Court for District of Colorado, 441 F.2d 313 (10th Cir. 1971) (false arrest; illegal search); Hooper v. Guthrie, 390 F.Supp. 1327 (W.D.Pa.1975) (false arrest; false imprisonment); Palma v. Powers, 295 F.Supp. 924 (N.D.Ill.1969) (§ 1983 action for illegal search and seizure) (result criticized in Hazard, Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems, 66 Cornell L.Rev. 564, 581-84 (1981) (hereinafter cited as Revisiting ), in the course of that author's response, as Reporter for the Second Restatement, to Professor Vestal's critique)
 
 
 [10]
 Subject of course to the possible application of various "qualifications and exceptions" that within conventional doctrine may make collateral estoppel inappropriate in a particular case, including most fundamentally a lack of full and fair opportunity to litigate. See McCurry, 449 U.S. at 95 & n.7, 101 S.Ct. at 415 & n.7
 
 
 [11]
 It is possible to analyze the basic point of difference between the Second Restatement 's position and that of Professor Vestal on guilty plea preclusions as going as much to how and by whom "adequate incentive" is to be shown as to whether the "actually litigated" requirement has general application in collateral estoppel doctrine. See Hazard, Revisiting, supra at 584. But there is no disagreement that adequate incentive is a critical component of collateral estoppel
 
 
 [12]
 Lying perhaps between these two types of issues and presenting still different sets of considerations are issues that in the criminal action represented not elements of the crime but of potential absolute affirmative defenses such as entrapment or stop-gap objections that had no evidence exclusion implications. On these we reserve decision, simply noting that each presents incentive-to-litigate problems that may differ in critical respects from those presented by evidence-suppression issues
 
 
 [13]
 That the proper cast of this burden might itself present a difficult problem, see Hazard, Revisiting, supra at 584. The problem is not of course before us, but its existence may properly be taken into account as an added difficulty in resolving the incentive question on a case by case basis
 
 
 [14]
 See Part III B (1)
 
 
 [15]
 See cases cited at note 3 supra. As there indicated, in all three of the cases, Wiggins, Rimmer, and Cramer, in which we have given issue preclusive effect in § 1983 actions to state court judgments of conviction, the judgments were based upon adjudications of guilt after trial. None involved guilty pleas. Additionally, in both Wiggins and Rimmer the issues precluded had been "fully litigated" and determined adversely to the § 1983 plaintiff in the state criminal action. This further distinguishes those decisions in a critical respect. In Cramer, the precluded issue had not been fully litigated in the state criminal action where it was potentially an evidence suppression issue. Cramer is therefore the case in the trilogy most like the instant case in those respects critical to application of collateral estoppel doctrine: there, as here, the issue was not an element-issue, and it was not fully litigated. But it differs in yet another critical respect which justified preclusion there but makes it inappropriate here. In Cramer, it was manifest from the record that the evidence used to convict in the state criminal prosecution was that obtained by the search and seizure which formed the basis for the § 1983 action. This made equally manifest the § 1983 plaintiff's "adequate incentive" to seek its suppression in the state action. It is precisely because the guilty plea obscures what was manifest in Cramer that we hold here against preclusion
 
 
 [16]
 Still another variant on the narrow question we decide would be that presented by an unsuccessfully litigated suppression motion followed by a guilty plea. Whether that situation should be thought controlled by our "fully litigated" decisions, or by this one, or be treated as presenting still different collateral estoppel problems, we need not here decide. See, e.g., Restatement (Second) of Judgments § 41, Comment g (1980) (finality for issue preclusion purposes); id. § 68.1(a), Comment a (effect of inability to obtain appellate review)