42 F.3d 1385
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Kathrina Y. CLARK; Terrence L. Clark; Rollin A. Workman;
Kimberly A. Clark; James K. Clark; Keisha M.
Clark, a Minor, residing with her
Guardian, aka Kenneth E.
Simmons, Plaintiffs-Appellees,
v.
Rose M. CLARK, Defendant-Appellant,
and
John T. Rhines Company, Defendant.
 No. 94-1166.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 27, 1994.
Decided Dec. 1, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Chief District Judge. (CA-92-3088)
 ARGUED: Craig Ellis, Ellis & Prioleau, Silver Spring, MD, for appellant.
 Jon L. Schoenhorn, Hartford, CT, ON BRIEF: Jeffry F. Neilsen, Jersey City, NJ, for appellees.
 D.Md.
 AFFIRMED.
 Before RUSSELL and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Under Maryland's common law "slayer's rule" a person who intentionally and feloniously causes the death of another cannot receive any portion of the victim's estate or the proceeds of the victim's life insurance policy. In this civil case the district court found by a preponderance of the evidence that defendant/appellant, Rose Clark, was involved in the murder of her husband, James Clark. Consequently, the court held that the slayer's rule precluded Rose from collecting the proceeds of James's life insurance policy. Finding no error, we affirm.
 
 I.
 
 2
 On October 31, 1989, at around 6:45 p.m., Rose and her daughter, Keisha, returned home from shopping to find James lying in a pool of blood in the basement. He had been shot to death sometime between 5:45 and 6:45 p.m. There were no eyewitnesses.
 
 
 3
 The Prince Georges County Police Department investigated the murder. After learning that Rose was having an affair with Ralph Green, a co-worker, the police considered Ralph and Rose as suspects. On December 7, 1989, Rose gave two written statements to the police. In her first statement, given to Detective Morris, Rose implicated Ralph in the murder but denied she had anything to do with it. She said Ralph told her that he killed James but that "[h]e didn't mean to kill him." JA 641. When asked whether Ralph was sorry that he killed James, Rose responded in the affirmative. Rose said the murder was a complete surprise to her.
 
 
 4
 In her second statement Rose opened up to Corporal Shimp. She admitted that she took Ralph to her home on the afternoon of the murder while James was at work. In addition, she led Ralph into the basement and told him the location of James's gun. She then left Ralph in the house and went shopping with her daughter. When asked by Shimp, "Did you know your husband was going to be killed by Ralph that night when you went shopping?", she replied,"Yes, I knew." JA 222.
 
 
 5
 The police then questioned Ralph. He admitted that he had been in the Clark home on two separate occasions for the purpose of killing James. He also admitted that on the afternoon of the murder Rose brought him into her home and gave him James's loaded gun. Ralph said he waited for James until around 5:35 or 5:40 p.m. (about five to ten minutes before James came home), but he "could not take it any longer so [he] put the gun ... on the floor, and left." JA 263. In short, he denied killing James.
 
 
 6
 On January 30, 1990, a Maryland grand jury returned a joint indictment against Ralph and Rose. Both were charged with murder, conspiracy to commit murder, and use of a handgun in a crime of violence. In addition, Rose was charged with solicitation to commit murder and as an accessory before the fact to murder. After a bench trial Ralph was found not guilty on all charges. Subsequently, Rose entered an Alford plea ( North Carolina v. Alford, 400 U.S. 25 (1970)) of guilty to one count of solicitation to commit murder, and the remaining charges against her were dropped. At her plea hearing Rose admitted that if called upon to do so the prosecution could prove at trial the following facts: on the day of the murder Rose met Ralph at a prearranged time at a store near her home; Ralph climbed into the trunk of Rose's car, and Rose drove him to the Clark home; Rose led Ralph into the basement of her home, gave him James's gun, and left to go shopping with her daughter; Rose knew James would come home while Ralph was in the house; and Rose intended that James would die as a result of her actions. Rose was sentenced to twentyfive years imprisonment.
 
 
 7
 Meanwhile, on November 16, 1989, Rose filed a claim with Metropolitan Life Insurance Company ("MetLife") to collect James's life insurance proceeds. James had designated Rose as the primary beneficiary on the MetLife policy, and James's five children and grandchild (the "children") were listed as beneficiaries in the event that Rose did not survive James. Believing that the Maryland slayer's rule might bar Rose from collecting the insurance proceeds, MetLife filed an interpleader complaint in federal district court to determine how the proceeds should be allocated. In a January 19, 1993, order the district court granted MetLife's motion for interpleader relief and discharged MetLife from further liability on the policy. (MetLife had deposited with the court the insurance proceeds, which totalled over $350,000.) Thereafter, Rose and the children filed separate motions for summary judgment and for a realignment of the parties. The court denied the motions for summary judgment and aligned the children as plaintiffs and Rose as the defendant.
 
 
 8
 A non-jury trial was held on January 10-11, 1994, at which Rose did not testify. The district court ruled in favor of the children. Specifically, the court found that the children proved by a preponderance of the evidence that Ralph murdered James and that Rose solicited the murder. Rose appeals.
 
 II.
 
 9
 Rose first argues that the children are barred under the doctrine of collateral estoppel from pursuing this action. Specifically, Rose says the Orphans' Court for Prince George's County, Maryland, which had jurisdiction over the administration of James's estate, has previously determined that the slayer's rule does not apply to her. In proceedings in that court, the special administrator appointed to administer James's estate contended that the slayer's rule severed the joint tenancy in the Clark home, thereby precluding Rose from collecting fifty percent of the proceeds from the sale of the home. The Orphans' Court disagreed, finding that "there was no evidence presented to establish that [Rose] was the criminal agent that caused [James's] death." JA 164.
 
 
 10
 The preclusive effect of a state court decision is determined by reference to state law. A federal court must give the same preclusive effect to a state court judgment that the judgment would be given in the courts of the state from which the judgment emerged. See 28 U.S.C. Sec. 1738; Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466-67 & n. 6 (1982). Thus, we must look to Maryland's preclusion rules to determine whether the application of the slayer's rule in this case should be barred under the doctrine of issue preclusion.
 
 
 11
 Maryland courts have applied the Restatement (Second) of Judgments in determining the applicability of issue preclusion. See, e.g., Cassidy v. Board of Educ. of Prince George's County, 557 A.2d 227 (Md.1989) (applying Restatement (Second) of Judgments Sec. 28). Section 28(5)(c) of the Restatement (Second) of Judgments says that there shall be no issue preclusion if "the party sought to be precluded ... did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." As our circuit has observed, "among the most critical guarantees of fairness in applying collateral estoppel is the guarantee that the party sought to be estopped had ... an adequate incentive to litigate 'to the hilt' the issues in question." Prosise v. Haring, 667 F.2d 1133, 1141 (4th Cir.1981) (Virginia law), aff'd, 462 U.S. 306 (1983).
 
 
 12
 In accordance with this general rule, the district court below found that it would be unfair to give collateral estoppel effect to the Orphans' Court proceedings because the children lacked an adequate incentive to litigate fully in those proceedings. The district court found that "the present action involves a significantly greater sum than did the earlier [Orphans' Court] proceeding." JA 327.
 
 
 13
 A district court's determination as to the fairness of issue preclusion in a given case is reviewed for abuse of discretion. See Swentek v. USAIR, Inc., 830 F.2d 552, 561 (4th Cir.1987); cf. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979). Here, the record shows that the children, who were scattered over at least three states, were served with copies of the special administrator's motion to sell estate property. That motion said that the total value of James's estate was $5,251 and that claims made against the estate exceeded $5,000.
 
 
 14
 The record does not show that the children were given notice of the value of the Clark home or any other valuation of James's assets. In short, the district court did not abuse its discretion in concluding that the children lacked an adequate incentive to travel to and participate in the Orphans' Court proceedings. Therefore, the district court did not err in rejecting Rose's collateral estoppel argument.
 
 III.
 
 15
 Maryland courts have developed a common law slayer's rule. The slayer's rule generally provides that one who feloniously and intentionally causes the death of another may not profit by taking any portion of the victim's estate or the proceeds of the victim's life insurance policy. Ford v. Ford, 512 A.2d 389, 392 (Md.1986). The applicability of the slayer's rule is determined in a civil proceeding. Id. The burden of proof is on the party asserting the slayer's rule to show by a preponderance of the evidence that the homicide was felonious and intentional. Id. at 397. Neither a conviction nor an acquittal in related criminal proceedings have preclusive effect in the civil action. Id. at 392; Johnson v. Hebb, 729 F.Supp. 1524, 1527 (D. Md.1990).
 
 A.
 
 16
 Rose argues that the district court erroneously shifted the burden of proof to her. We disagree. The court clearly stated that the children had the burden of proof and that the children had shown by a preponderance of the evidence that Ralph murdered James. See, e.g., JA 577 ("I find that the plaintiffs, as I previously ruled, have the burden of proof under the Maryland Slayer's Rule. I find that they have met that burden.").
 
 B.
 
 17
 Rose's central argument is that the children did not show by a preponderance of the evidence that she feloniously and intentionally caused the murder of James. To be sure, she concedes that she solicited Ralph, her lover, to murder James. And she concedes that she brought Ralph to her home on the day of the murder for the purpose of killing James. In addition, she concedes that she led Ralph into the basement, where James's dead body was found. Further, she concedes that she gave James's gun to Ralph and that James was killed by gunshots. Finally, she concedes that shortly before James came home from work she left Ralph in the house, armed and alone. But, she says, even with the foregoing facts a rational factfinder could not infer that Ralph actually murdered James. "No ... circumstantial evidence supports the verdict," Appellant's Br. at 16, she claims.
 
 
 18
 Federal Rule of Civil Procedure 52(a) says that "[f]indings of fact ... shall not be set aside unless clearly erroneous...." Rule 52(a) "mandates that the result reached by the district judge is not to be disturbed if there are adequate facts to support it...." Hannon Armstrong & Co. v. Sumitomo Trust & Banking, 973 F.2d 359, 368 (4th Cir.1992). We " 'accord wide latitude to findings of the trial court with respect to ... facts and to inferences therefrom.' " Schrader v. White, 761 F.2d 975, 980 (4th Cir.1985) (quoting Phillips v. Crown Central Petroleum Corp., 556 F.2d 702, 703 (4th Cir.1977)).
 
 
 19
 The district court below, the factfinder here, recognized the "theoretical possibility," JA 578, that someone else could have murdered James and that if this had been a criminal case, the result might have been different. But this is not a criminal case, and the court found that circumstantial evidence supported a finding by a preponderance of the evidence that Ralph murdered James. The court certainly could infer from the facts before it that Ralph went through with the plan and murdered James. This finding was not clearly erroneous.
 
 
 20
 Rose's alleged exculpatory evidence does not alter our conclusion that the district court drew reasonable inferences here. She emphasizes, for instance, that alibi witnesses testified that Ralph was at work around the time of the murder. But the district court expressly found that their testimonies lacked credibility. "[D]ue regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). "As an appellate court we are not authorized to check the credibility determinations made by the trier of fact." McNairn v. Sullivan, 929 F.2d 974, 978 (4th Cir.1991).
 
 IV.
 
 21
 We affirm the judgment of the district court.
 
 
 22
 AFFIRMED.