**IDEAL MUTUAL INSURANCE COMPANY, a Corporation, Appellee,**

v.

**Dennis R. WINKER, Appellant.**

No. 66163.

Supreme Court of Iowa.

May 19, 1982.

Thomas R. Eller of Nash, Eller, Brink & Claussen, Denison, for appellant.

David E. Green, Carroll, for appellee.

Considered by UHLENHOPP, P. J., and ALLBEE, McGIVERIN, LARSON, and SCHULTZ, JJ.

UHLENHOPP, Justice.

In this appeal we determine whether a guilty plea entered in a criminal prosecution precludes the convicted party from relitigating the issue of his criminality in a subsequent declaratory action brought against him by an insurer to construe an exclusionary provision of its policy.

On February 18, 1979, Dennis R. Winker shot and killed his estranged girl friend, Mary Jo Heiman, while she was working as a waitress at the Country Kitchen Cafe in Carroll, Iowa. At the time Winker was an off-duty deputy of the Carroll County Sheriff. He was charged with first-degree murder, but on June 22, 1979, he pled guilty to a charge of second-degree murder after entering into a plea bargain with the county attorney. The district court accepted the plea and sentenced him accordingly.

The administrator of Heiman's estate subsequently brought a civil action against Winker asking damages for wrongful death. At the time of the shooting, Winker was insured under a law enforcement officers comprehensive liability insurance policy issued to the Carroll County Sheriff by Ideal Mutual Insurance Company (Ideal).

Prompted by the administrator's action, Ideal brought the present declaratory action against Winker to determine whether the policy obligated it to defend him in the wrongful death action and to indemnify him in the event he incurred civil liability. Ideal claimed that Winker was off duty and the policy did not cover the incident, and also that the incident came within exclusionary clause (j) of the policy. That clause states:

This insurance does not apply . . .

. . . .

(j) to damages assessed against an insured as punitive or exemplary damages or *resulting from a criminal act.*

(Emphasis added.) Winker filed an answer averring affirmatively *inter alia* that the death of Mary Jo Heiman was not the result of an intentional criminal act, but rather, a mental breakdown. He asserted that exclusionary clause (j) was therefore inapplicable to deny coverage.

Ideal then filed an application for adjudication of law points seeking a determination that it had no obligation to defend or indemnify Winker when the loss was attributed to his own criminal act and that a mental breakdown, if proven, would not constitute a defense to the terms of exclusionary clause (j). In ruling on the application, the trial court, by agreement of the parties, took judicial notice of the criminal prosecution against Winker and of the guilty plea to the second-degree murder charge. The trial court found that the guilty plea conclusively established for purposes of the declaratory action that Winker had committed a criminal act. The trial court also held that a mental breakdown, even if proven, would not constitute a defense to the exclusionary terms. It there-

fore concluded that exclusionary clause (j) would apply to deny coverage for the loss resulting from Winker's criminal act regardless of any mental breakdown he may have suffered. The ruling resolved all the issues presented by the declaratory action and, for purposes of appeal, became a final order. *See* Iowa R.Civ.P. 105.

Winker appealed. He contends in this court that the trial court erred in its adjudication of law points (1) in holding that the guilty plea was conclusive proof of his commission of a criminal act for purposes of the declaratory action, and (2) in holding that a mental breakdown was not a valid defense to exclusionary clause (j). We dispose of the case on the first issue and therefore do not reach the second one.

I. *Guilty plea—preclusive effect.* The trial court applied the doctrine of issue preclusion and held that Winker's guilty plea in the criminal action conclusively established his commission of a criminal act for purposes of the declaratory action. On appeal Winker concedes that the guilty plea was admissible evidence in the present action, but argues that it should not be given preclusive effect. He alleges that the plea was entered only because of the risk of a first-degree murder conviction and not because he admitted second-degree murder. *See State v. Buhr*, 243 N.W.2d 546, 550–51 (Iowa 1976); *State v. Heisdorffer*, 217 N.W.2d 627, 629 (Iowa 1974). Notwithstanding that we do not have the plea of *nolo contendere,* Winker contends he should be permitted to introduce evidence to explain the circumstances surrounding his guilty plea and to establish his affirmative defense of mental breakdown.

In making that argument Winker relies on a line of cases commencing with *Book v. Datema*, 256 Iowa 1330, 131 N.W.2d 470 (1964). In *Book* this court held that the record in a criminal case showing a guilty plea was admissible as an admission in a subsequent civil action arising out of the same event. The court also held, however, that a guilty plea admitted under those circumstances was not to be given preclusive effect and could be explained through

the introduction of other evidence. *Id.* at 1333, 131 N.W.2d at 471. *See Farm and City Insurance Company v. Hassel*, 197 N.W.2d 360, 364 (Iowa 1972); *Nassif v. Pipkin*, 178 N.W.2d 334, 335–36 (Iowa 1970); *Martin v. Cafer*, 258 Iowa 176, 185, 138 N.W.2d 71, 77 (1965). *See also* Annot., 18 A.L.R.2d 1287, 1307 (1951).

On the other hand, Ideal cites a number of cases holding that an accused pleading guilty in a criminal proceeding may be precluded in a subsequent civil action from relitigating issues necessarily determined by the criminal conviction. *See, e.g., Nathan v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir. 1977); *Brazzell v. Adams*, 493 F.2d 489, 490 (5th Cir. 1974); *Metros v. United States District Court for the District of Colorado*, 441 F.2d 313, 317 (10th Cir. 1970). In light of the trend reflected by those cases and the recent developments that have reshaped the law of res judicata, the time has arrived for us to re-examine *Book* and to determine whether an accused's guilty plea should have preclusive effect against him in a subsequent civil action.

A. Substantial support exists for the proposition that a guilty plea should be given preclusive effect against the accused. Two prominent authorities considering the question agree that a convicted person may be estopped from relitigating issues determined by the plea under certain circumstances, but disagree as to the legal basis on which that result rests.

The American Law Institute takes the position generally that a party may not be precluded from relitigating an issue in a subsequent action on a different claim unless the issue was "actually litigated" in the first action. *Restatement (Second) of Judgments* § 68, and Comments *d, e* (Tent. Draft No. 4, 1977). The effect of a prior criminal judgment in a subsequent civil action is considered in section 133 of the Restatement. That section does not give "preclusive" effect to a guilty plea in a later civil action for the reason that no "actual litigation" occurred in the criminal proceeding. *Restatement (Second) of Judgments* § 133, Comment *b* (Tent. Draft No. 7, 1980)

("The rule of this section presupposes that the issue in question was actually litigated in the criminal prosecution. See § 68, Comment *e*. Accordingly, the rule of this section does not apply where the criminal judgment was based on a plea of *nolo contendere* or a plea of guilty."). Comment *b* does, however, recognize that a convicted person may be "estopped" by his guilty plea from relitigating matters determined in the criminal proceeding. The relevant portion of the comment states:

> A defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense. However, under the terms of this Restatement such an estoppel is not a matter of issue preclusion, because the issue has not actually been litigated, but is a matter of the law of evidence beyond the scope of this Restatement.

(Emphasis added.) The Reporter's Note accompanying the comment states in part:

> Preclusion has also been applied when the conviction was obtained by a guilty plea, *e.g. Plunkett v. C.I.R.*, 465 F.2d 299 (7th Cir. 1972), *a result that may be correct but which, in the analysis of this Restatement, is properly explained as a matter of estoppel rather than issue preclusion. Cf. Upshaw's Estate v. C.I.R.*, 416 F.2d 737 (7th Cir. 1969) holding that a guilty plea is evidentiary as an admission.

*Restatement, supra* § 133, at 70 (emphasis added). Professor Geoffrey C. Hazard, Jr., who served as one of the reporters for the Restatement, explains the estoppel notion referred to in Comment *b* thus:

> A good case can be made for saying that if a matter is distinctly put in issue and formally admitted, the party making the admission should be bound by it in subsequent litigation. This was the old formulation of the rule of "judicial estoppel," as it was then called: "The former verdict is conclusive only as to facts directly and distinctly put in issue . . . ." But how can a matter be "directly and distinctly put in issue"? Obviously, by actual litigation. Another way is

> through pleadings. In a pleading system where matters are "distinctly put in issue," it makes sense to say that if a proposition is clearly asserted, and if a party is called upon solemnly to admit or deny the proposition, and if the stakes are high enough to assure that the party is serious in dealing with the issue, and if the party then admits or fails to deny the proposition, then he ought to be estopped from controverting it on some other occasion, particularly if that other occasion involves essentially the same transaction. *The clearest case for such an estoppel is where a defendant pleads guilty to a substantial criminal charge and then seeks in civil litigation concerning the same transaction to assert that he did not commit the criminal act.*

Hazard, *Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems*, 66 Cornell L.Rev. 564, 577–78 (1981) (emphasis added, footnote omitted).

In sum, the Institute recognizes that a guilty plea can be conclusive in a civil suit, but it is forced to conclude that this result is beyond the scope of issue preclusion to maintain consistency with its "actual litigation" requirement.

Professor Allan D. Vestal, on the other hand, holds that issue preclusion applies in the guilty plea situation to prevent relitigation of issues necessary for conviction. Vestal, *Res Judicata/Preclusion* V–388 (1969); Vestal, *Issue Preclusion and Criminal Prosecutions*, 65 Iowa L.Rev. 281, 295–96, 331–32 (1980). He criticizes the Institute's basic actual litigation requirement and, as an alternative, proposes that issue preclusion apply whenever the party sought to be estopped had a full and fair opportunity and an adequate incentive to litigate the particular issue in the first action. Vestal, *The Restatement (Second) of Judgments: A Modest Dissent*, 66 Cornell L.Rev. 464, 466–497 (1981). He thus argues that so long as the party sought to be estopped had the opportunity and incentive to litigate, issue preclusion should be applied regardless of whether the issue was or was not actually litigated in the prior action. Hav-

ing rejected the actual litigation requirement as a predicate, he concludes as a matter of issue preclusion that a guilty plea should foreclose relitigating issues necessarily determined in the criminal prosecution.

Notwithstanding their disagreement as to legal basis, probably Professors Hazard and Vestal would come out the same in most guilty-plea cases, one under estoppel and the other under issue preclusion. Hazard, *supra* at 581. The question is therefore whether the conclusive effect of a guilty plea should be attributed to the notion of estoppel to which the Institute refers or to issue preclusion which Professor Vestal advocates. We turn to the case law on that question.

Perhaps the most instructive opinion is from the United States Court of Appeals, Fourth Circuit, in *Prosise v. Haring*, 667 F.2d 1133 (4th Cir. 1981). In that case Prosise brought a federal civil rights action for damages against police officers alleging that they violated his fourth amendment rights when they searched his apartment for drug paraphernalia and chemicals used to manufacture phencyclidine (PCP). He had earlier pled guilty in a state criminal action to a charge of manufacturing illegal drugs. As a defense in the civil rights case, the officers argued that Prosise's guilty plea necessarily implied the search was lawful, and that under the doctrine of issue preclusion Prosise should be foreclosed from relitigating that issue. The district court agreed and entered summary judgment for the officers. On appeal the court framed the question in terms of whether a guilty plea would be preclusive in a federal civil rights action "of an issue which in the state action was not actually litigated and could only have been litigated in relation to the exclusion of evidence on fourth amendment grounds." *Id.* at 1138. To help answer that question the court looked to the Restatement and stated:

[The answer] cannot be found with certainty in the recent *Restatement (Second) of Judgments* (1980), taking that as perhaps the best possible source for a responsible statement of "conventional doctrine" in this realm. This important secondary authority suggests that as a general proposition criminal judgments based upon guilty pleas can have no collateral estoppel effect as to *any* issues, because by definition none has been "actually litigated," *Restatement (Second) of Judgments* § 133, Comment *b* (1980), a fundamental predicate for issue preclusion in the Restatement's formulation, *see id.* § 68, Comment *e*. This general proposition is immediately hedged, however, by the concession that "[a] defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts *representing the elements of the offense* ... not [as] a matter of issue preclusion ... but [as] a matter of the law of evidence ...," *id.*, § 133 Comment *b* [emphasis added].

This concession is forced by a significant number of decisions, including several by other federal courts of appeals, that have rather routinely found estoppel arising from guilty pleas notwithstanding the lack of actual litigation of the critical issues.

*Id.* at 1139–40 (emphasis in original, footnotes omitted). In a footnote the court discussed the effect on the Restatement of decisions according preclusive effect to a guilty plea:

These decisions have recently been collected in Vestal, *Issue Preclusion and Criminal Prosecutions*, 65 Iowa L.Rev. 281 & nn. 122–25 (1980); Vestal, *The Restatement (Second) of Judgments: A Modest Dissent*, 66 Cornell L.Rev. 464, 478–83 (1981) [hereinafter cited as *Modest Dissent*] in the course of that respected commentator's challenge to the *Second Restatement's* general position that an essential predicate for collateral estoppel is that the issues shall have been "actually litigated." The existence of these decisions is of course recognized in the *Second Restatement*, but their results, though conceded to be possibly "correct," are there ascribed to estoppel principles derived from the law of evidence rather than from traditional res judicata doctrine. *Id.* § 133, Comment *b*; Reporter's

Note, Comments b and c. *Many of the cases, however, clearly reveal an assumption that res judicata/collateral estoppel doctrine is being applied.* Freed of any "mutuality" and "actually litigated" requirements, collateral estoppel doctrine would of course clearly apply, and Professor Vestal so explains the cases. *See* Vestal, *Modest Dissent, supra* at 478–83. *For our immediate purposes we have to assume that these decisions constitute elements in the body of "conventional" collateral estoppel doctrine ... notwithstanding the indications of a lack of scholarly consensus on the exact shape of that doctrine.* *Id.* at 1140 n. 7 (emphasis added). The *Prosise* court was of the opinion that the conclusive effect of a guilty plea was a matter properly attributable to the law of issue preclusion.

A number of cases similarly hold that a guilty plea precludes relitigation in a subsequent civil action of all issues necessarily determined by the conviction. *United States v. $31,697.59 Cash*, 665 F.2d 903, 906 (9th Cir. 1982); *Fontneau v. United States*, 654 F.2d 8, 10 (1st Cir. 1981); *Ivers v. United States*, 581 F.2d 1362, 1367 (9th Cir. 1978); *United States v. Podell*, 572 F.2d 31, 35 (2nd Cir. 1978); *Nathan v. Tenna Corp.*, 560 F.2d 761, 763–64 (7th Cir. 1977) ("[A] criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted. Accordingly, Nathan's guilty plea to federal mail charges for splitting commissions with Cryza conclusively establishes that his conduct was criminal, and Nathan may not present evidence to the contrary in this civil proceeding." (Citation omitted.)); *Brazzell v. Adams*, 493 F.2d 489, 490 (5th Cir. 1974); *Plunkett v. Commissioner of Internal Revenue*, 465 F.2d 299, 305 (7th Cir. 1972); *Metros v. United States District Court for the District of Colorado*, 441 F.2d 313, 316–17 (10th Cir. 1971); *Ford v. Burke*, 529 F.Supp. 373, 379–80 (N.D.N.Y.1982); *Alsco-Harvard Fraud Litigation*, 523 F.Supp. 790, 801–04 (D.D.C. 1981); *United States v. Krietemeyer*, 506 F.Supp. 289, 292 (S.D.Ill.1980); *Mayberry v. Somner*, 480 F.Supp. 833, 838 (E.D.Pa.1979); *United States v. Cripps*, 460 F.Supp. 969, 975 (E.D.Mich.1978); *Hooper v. Guthrie*, 390 F.Supp. 1327, 1333–34 (W.D.Pa.1975); *United States v. Levinson*, 369 F.Supp. 575, 577 (E.D.Mich.1973); *United States v. Ben Grunstein & Sons, Co.*, 127 F.Supp. 907, 911–12 (D.N.J.1955); *Alexander v. City of Peekskill*, 80 A.D.2d 626, 628, 436 N.Y.S.2d 327, 328 (1981). *See also* 1B *Moore's Federal Practice* ¶ 1.418, at 2706–08 (1982).

Examination of these cases discloses that the courts relied on the doctrine of issue preclusion (or "collateral estoppel") to preclude relitigation of issues determined by guilty pleas. On the other hand, the parties have not cited and we have not located cases in which the preclusive effect of a guilty plea was attributed to evidentiary estoppel. We conclude that the conclusive effect given to a guilty plea in the cited decisions is founded on issue preclusion rather than estoppel.

▪ B. The general principle of issue preclusion in Iowa developed in the context of successive civil actions. Under that principle, further litigation of an issue is precluded when four conditions exist: (1) the issue concluded must be identical in the two actions; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the judgment. *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1980); *Trushcheff v. Abell-Howe Co.*, 239 N.W.2d 116, 132 (Iowa 1976); *Bertran v. Glenn Falls Insurance Co.*, 232 N.W.2d 527, 533 (Iowa 1975); *Schneberger v. United States Fidelity & Guaranty Co.*, 213 N.W.2d 913, 917 (Iowa 1973). The first, third, and fourth conditions exist here. But the second condition, requiring litigation of the particular issue, would seem at first glance to deny preclusive effect to a guilty plea under the Iowa version of issue preclusion. We must therefore inquire whether a

guilty plea is of such a nature as to lend itself to the application of our issue preclusion principle despite the absence of actual litigation in the criminal proceeding.

An important characteristic which distinguishes the criminal action terminated by a guilty plea from other judicial proceedings in which no actual litigation takes place—the ordinary default case in civil proceedings—is the requirement that the trial court ascertain a factual basis exists for the plea. Iowa R.Crim.P. 8(2)(*b*); *State v. Hansen*, 221 N.W.2d 274, 276–77 (Iowa 1974); *Ryan v. Iowa State Penitentiary*, 218 N.W.2d 616, 618–19 (Iowa 1974). Although the parties do not litigate the question of whether the accused committed each element constituting the crime, the effect of the factual basis rule is to require the existence of evidence sufficient to convince the trial court that the plea is founded on fact. Once a guilty plea is accepted, a judicial determination has thus been made with respect to the essential elements of the crime. We hold the factual basis requirement for guilty pleas is sufficient to meet the second requirement of our issue preclusion principle. We think a result is fair which precludes relitigation concerning an essential element of a crime when the accused has tendered a guilty plea, which necessarily admits the elements of the crime, and the court has ascertained that a factual basis exists for the plea and accepts it. *See Mayberry v. Somner*, 480 F.Supp. 833, 839–40 (E.D.Pa. 1979) (factual basis underlying guilty plea relied on to invoke issue preclusion in later civil action).

C. *Prosise* also determined the extent of the preclusive effect accorded a guilty plea. The question was whether a guilty plea precluded relitigation of an issue that could only have been litigated in the criminal proceeding in relation to the exclusion of evidence on constitutional grounds. The court distinguished that question from the related question of whether a guilty plea would be preclusive as to commission of the crime itself. Referring to decisions holding guilty pleas to be preclusive, the court drew this distinction:

> With only a few exceptions, these decisions finding preclusion in guilty pleas have concerned issues that represented elements of the crime charged. *As to such "element-issues" it can with reason be said—and has been said in various ways—that though not actually litigated they have necessarily been judicially admitted by the plea, so that the criminal defendant is estopped to contest them in subsequent civil litigation.* See, e.g., Brazzell v. Adams, 493 F.2d 489, 490 (5th Cir. 1974); Hernandez-Uribe v. United States, 515 F.2d 20, 21 (8th Cir. 1975); Ivers v. United States, 581 F.2d 1362, 1367 (9th Cir. 1978). *If this then be conventional—or at least plainly emerging—doctrine respecting element-issue preclusion by guilty plea, the question remains whether it should apply as well to non-element issues,* specifically, for our purposes to the potential but unlitigated issue whether specific evidence of the crime should be suppressed on fourth amendment grounds.

*Id.* at 1140 (emphasis added, footnote omitted). Although the court reserved decision on the essential element question it concluded that a guilty plea should not be preclusive respecting exclusion of evidence on fourth amendment grounds. The dispositive factor in the court's decision was the concept of incentive to litigate:

> Assuming, without deciding, that a state judgment based on a guilty plea should ordinarily have preclusive effect in a later [federal civil rights] action as to all issues representing essential elements of the crime, we do not think it should have preclusive effect as to potential but not actually litigated issues respecting the exclusion of evidence on fourth amendment grounds. There is a critical distinction, grounded in fundamental policies respecting the proper application of collateral estoppel, between the two types of issues. *It relates to the assurance that there was adequate incentive in the criminal proceeding fully to litigate the issue sought to be precluded.*

Whatever the differences among courts and commentators as to the "actually litigated" requirement for issue preclusion, there has been general agreement—to the point of convention—that among the

most critical guarantees of fairness in applying collateral estoppel is the guarantee that the party sought to be estopped had not only a full and fair opportunity but an adequate incentive to litigate "to the hilt" the issues in question. *See generally Restatement (Second) of Judgments* § 68.1(e)(iii), Comment *j* (1980). *With respect to issues representing the very elements of the crime charged, the adequacy of incentive to contest may be thought manifest in relation to any guilty plea.* But it is not necessarily manifest with respect to potential but unlitigated issues related to the exclusion of evidence on fourth amendment grounds.

*Id.* at 1140–41 (emphasis added, footnotes omitted).

■ The present case involves the essential elements of the crime, not the added complication in *Prosise.* We thus reserve the *Prosise* question for another day, but we hold that a guilty plea, in a proceeding in which a court ascertains that a factual basis exists for the plea and accepts the plea, satisfies the second requirement of our general principle of issue preclusion. Our holding is limited to those cases in which the guilty plea was entered in accordance with the procedures outlined in rule 8(2)(*b*) of the rules of criminal procedure or in accordance with the requirements detailed in *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969), and *Brainard v. State*, 222 N.W.2d 711 (Iowa 1974). The conclusion we have reached is inconsistent with *Book v. Datema*, 256 Iowa 1330, 131 N.W.2d 470 (1964). That decision and those which rely on it are overruled. The rule in *Book*, however, will continue to govern cases in which the guilty plea was not entered in accordance with rule 8(2)(*b*) of the rules of criminal procedure or the previous *Sisco-Brainard* requirements.

Although our holding is premised on the law of issue preclusion and therefore ostensibly inconsistent with the position adopted by the American Law Institute, we view our position as consistent with the rationale underlying the actual litigation requirement of the Restatement. The apparent purpose of that requirement is to preclude relitigation only after the parties have obtained a judicial determination of an issue following the exploration of that issue through the litigative process. Judgment entered after trial, however, is not the only type of determination which will satisfy the purpose of the actual litigation requirement. That purpose can also be satisfied by a determination made without the full exploration that an issue receives during trial on the merits—by a motion for summary judgment, a motion to dismiss, or their equivalents. *Restatement, supra* § 68, Comment *d.* The rule we adopt today likewise guarantees adequate exploration of the issues. Under the factual basis requirement the question of criminal liability is fully explored by the parties and the court and a judicial determination is made with respect to the essential elements of the crime. According issue preclusion effect to a guilty plea for which a factual basis has been found is therefore different from giving such effect to entry of a default judgment when no exploration of the issues has occurred.

■ D. Applying our conclusion to the facts before us, we hold that Winker had a full and fair opportunity to defend against the State's accusations in the criminal prosecution but chose to waive that opportunity by pleading guilty. The record of the guilty plea proceeding discloses an understanding both of the right to trial and of the consequences of waiver. Moreover, faced with the prospect of prolonged incarceration, Winker undoubtedly had adequate incentive to litigate the issue of his guilt. The trial court in the criminal action also found a factual basis for the plea:

> The Court: Mr. Polking [County Attorney], would you establish the factual basis for second degree, please? Mr. Polking: Do you want a general statement from the defendant personally, or do you want me to ask specific questions?

> The Court: Specific questions, I think, would be better.

> Mr. Polking: Mr. Winker, on February 18, 1979, were you in the Country Kitchen in Carroll, Carroll County, Iowa? Mr. Winker: Yes.

> Mr. Polking: Did you enter the Country Kitchen in Carroll, Carroll County,

Iowa, on February 18, 1979, carrying on your person your personal revolver; namely, a 357 Magnum? Mr. Winker: Yes.

Mr. Polking: Was Mary Jo Heiman in the Country Kitchen on February 18, 1979? Mr. Winker: Yes, she was.

Mr. Polking: Did you know Mary Jo Heiman? Mr. Winker: Yes, I did.

Mr. Polking: Did you have a conversation with Mary Jo Heiman on that day in that place? Mr. Winker: Yes.

Mr. Polking: Did this conversation take place at or around the cash register area of the Country Kitchen? Mr. Winker: Yes, it did.

Mr. Polking: Did you at that time, approximately at that area; namely, the cash register area, while, during or immediately after and/or immediately after this conversation, did you have on your person this 357 Magnum revolver? Mr. Winker: Yes, I did.

Mr. Polking: Did you at that time or around that time at the same place; namely, the cash register area, draw that 357 Magnum personally, with your hand, from its holster attached to your person? Mr. Winker: My hand drew it from my belt. I wasn't wearing a holster.

Mr. Polking: Did you, with your personal hands, aim that weapon at the direction of the person of Mary Jo Heiman? Mr. Winker: Yes.

Mr. Polking: Did you fire that 357 Magnum from that position by the cash register in the Country Kitchen on February 18, 1979, at the person of Mary Jo Heiman: Mr. Winker: Yes.

Mr. Polking: Did the firing of that weapon; namely, your 357 Magnum, at the cash register of the Country Kitchen in Carroll on February 18, 1979, discharge the missile that hit the person of Mary Jo Heiman?

Mr. Eller [Defense Attorney]: Your Honor, we'll stipulate that she was—I'm sure you'll correct me, Mr. Winker, but we'll stipulate that she died as a result of the missile or bullet fired from the weapon.

The Court: You will so stipulate, Mr. Winker? Mr. Winker: Yes.

Finally, the trial court explored the question of Winker's mental condition at the time of the shooting. Winker was examined by three medical experts—a psychiatrist employed to be the State's witness and a psychiatrist and a psychologist appointed on behalf of the defense. The record of the hearing indicates that the three experts agreed the element of premeditation necessary for first-degree murder did not exist at the time of the incident. They also agreed, however, that Winker was not insane when he shot Heiman. The record also discloses a discussion between Winker's attorney and the trial court in which the attorney reviewed the affirmative defenses that could be raised and the feasibility and possibility of success of doing so. Apparently he decided that the chances of prevailing on an insanity defense were slight given the medical experts' opinions. A diminished responsibility defense was also considered but rejected by Winker and his attorney. Through these discussions the trial court was informed of the questions surrounding Winker's mental condition on the day of the shooting. The trial court nevertheless was satisfied that the chances of prevailing on a defense based on mental capacity were not good; it therefore accepted the plea of guilty to second-degree murder. *See Veverka v. Cash*, 318 N.W.2d 447 (Iowa 1982).

We conclude that the second condition as well as the other three conditions necessary to invoke the principle of issue preclusion have been established. Winker is precluded in this action from denying his guilt of second-degree murder.

■ II. *Exclusionary language.* Winker contends that the term "criminal act" as used in the exclusionary clause is ambiguous and in need of construction. We disagree. Rules of construction are applied only when the terms of a policy create uncertainty. *Bosch v. Garcia*, 286 N.W.2d 26, 28 (Iowa 1979); *State Farm Auto Insurance Co. v. Malcolm*, 259 N.W.2d 833, 835 (Iowa 1977); *Steel Products Co., Inc. v. Millers National Insurance Co.*, 209 N.W.2d

32, 36 (Iowa 1973). The term "criminal act" means exactly what it says—a violation of those laws which are enacted to protect the public and which render the act punishable under the criminal code. The crime of second-degree murder falls within that definition. *See* 707.3, The Code 1979.

The district court did not err in ruling that Winker was precluded by his guilty plea from relitigating his criminality.

Although the district court inadvertently called its decision a "summary judgment", it properly entered final judgment since its holding disposed of the whole case, thus allowing Winker to appeal as of right as he did under rule 105 of the rules of civil procedure.

AFFIRMED.