---

No. 94-4045

---

Lonnie Kent Wildrick,           *
                                     *

     Appellant,           *
                                     * Appeal from the United States
      v.                  * District Court for the
                                     * Southern District of Iowa.

North River Insurance Company,  *
                                     *

     Appellee.            *

---

Submitted:  October 19, 1995

Filed:  February 6, 1996

---

Before MORRIS SHEPPARD ARNOLD, F. GIBSON, and ROSS, Circuit Judges.

---

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Lonnie Kent Wildrick sued North River Insurance Company in Iowa state court in 1992, claiming that North River breached its contract by withdrawing its defense of Phillips, P.C., a professional corporation earlier sued by Mr. Wildrick for negligence in the performance of accounting services. Mr. Wildrick asserted that claim as both a third-party beneficiary of Phillips's professional liability insurance policy and as Phillips's assignee for claims against North River relative to Phillips's defense in the professional negligence action (which resulted in a state court judgment against Phillips for approximately $427,500). Mr. Wildrick also asserted claims for breach of fiduciary duty, breach of an implied covenant of good faith and fair dealing, and bad faith. North River removed the case to federal district court.

On motion by North River, the district court dismissed the third-party beneficiary claim in late 1992 for failure to state a claim. On motion by North River, the district court granted summary judgment to North River in late 1994 on the remaining claims, holding, as a matter of law, that Phillips had failed to cooperate in the professional negligence case. Mr. Wildrick appeals. We affirm the rulings of the district court.[1]

I.

Robert Phillips was the principal in a professional corporation that performed accounting services between 1983 and 1986 for an Iowa company owned by Lonnie Kent Wildrick (for simplicity's sake, we call the professional corporation "Phillips" in this opinion; we refer to Robert Phillips himself as "Robert Phillips" or "Mr. Phillips"). In late 1986, in preparation for the sale of his company, Mr. Wildrick requested an independent audit of the company's finances. As a result of the independent audit, Mr. Wildrick learned that financial statements prepared by Phillips for the company overstated the company's accounts receivable by at least $100,000.

In late 1988, Mr. Wildrick sued Phillips in Iowa state court, alleging conversion, breach of contract, and professional negligence in accounting services -- all three counts based on payments alleged to have been improperly made to Phillips, to Robert Phillips, or to another entity in which Phillips's principal, Robert Phillips, was also the principal. The allegedly improper payments were exactly the same in each count. (Mr. Wildrick also sued Robert Phillips, individually, but Mr. Phillips's subsequent petition for bankruptcy stayed any action against him personally.) Phillips notified the company that had

---

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

issued Phillips's professional liability insurance policy, North River Insurance Company. The insurance company advised Phillips, in response, that North River would provide "a complete defense to all allegations" of the complaint. North River called to Phillips's attention, however, that North River was reserving its rights to limit the defense provided to only those claims covered by the policy.

The professional liability insurance policy issued by North River covered claims made against Phillips between late 1988 and late 1989 and contained three provisions relevant to this case. First, the policy excluded from coverage any claims "arising out of any dishonest, fraudulent, criminal or malicious act or omission" of Phillips and any claims "arising out of [Phillips's] gaining in fact any personal profit or advantage to which [Phillips] was not legally entitled." Second, the policy stated that in "any legal proceedings" against Phillips involving a claim arguably covered by the policy, Phillips was required to "cooperate with [North River] and upon [North River's] request [to] attend hearings and trials and [to] assist in effecting settlements, securing and giving evidence, ... and in the conduct of suits"; Phillips was also required "not [to] ... admit any liability." Finally, the policy provided that North River was not liable for claims against Phillips arguably covered by the policy unless Phillips "shall have fully complied with all the terms" of the policy.

North River hired a lawyer to defend Phillips in the state court action. From late 1988 until early 1991, according to an affidavit, a deposition, and subsequent trial testimony from that lawyer in a related action, Robert Phillips "represented ... that [Mr. Wildrick's lawsuit] came as a complete shock to him and that the allegations ... that he converted funds to his own use were completely untrue." During that period, according to the lawyer, Mr. Phillips "vehemently and vigorously denied to [the lawyer] that

he, or to his knowledge anyone at Phillips, P.C., had ever converted or misappropriated funds entrusted to him." In addition, Mr. Phillips "represented to [the lawyer] that there were appropriate explanations for all of the funds paid to him, his professional corporation, and [the other entity in which Mr. Phillips was the principal]."

Specifically, according to the lawyer, Robert Phillips asserted that "he was to receive a yearly salary of $30,000 for his accounting work" (as business manager) for Mr. Wildrick's company and that some of the payments reflected reimbursement to Mr. Phillips of advances that he made to Mr. Wildrick's company to pay bills. Mr. Phillips also contended, with respect to the other entity in which he was also the principal, first, that Mr. Wildrick had asked Mr. Phillips to deposit a $25,000 check to the credit of that entity in order to "prevent others in the business and Mr. Wildrick's wife from knowing how profitable [Mr. Wildrick's company] was" and, second, that "checks and cash had been paid back to Mr. Wildrick." In early January, 1991, in preparation for a settlement conference, the lawyer hired by North River advised the state court, with respect to Phillips's defense, that "Mr. Phillips generally denies that he improperly made any payments from [Mr. Wildrick's company] to either himself, his firm or [the other entity in which Mr. Phillips was a principal]. ... It is [Phillips's] position that all such payments were proper."

Just two days later, however, a second lawyer, hired by Robert Phillips himself, advised the state court and the lawyer hired by North River that Mr. Phillips had been "in contact with ... the office of the United States Attorney ... to present his admission of misappropriation of funds entrusted to him." (It later became known that Mr. Phillips first went to law enforcement authorities in mid-December, 1990, approximately three weeks before

-4-

the second lawyer's letter.) The second lawyer stated that the lawyer hired by North River "had no knowledge" of that contact.

Four days after the second lawyer's letter to the state court, a front-page article appeared in the local newspaper stating that Robert Phillips had "told federal investigators [that] he stole more than $1 million from some of his clients." The settlement conference in the state court action took place on that same day. At that conference, Mr. Wildrick evidently advised the state court that he intended to drop the claims for breach of contract and for conversion, and that a professional negligence claim would be the only issue for trial. Mr. Wildrick did amend his complaint to that effect at a pretrial conference in early February, 1991, four days before the state trial.

Only hours after the pretrial conference, North River informed Phillips that North River was withdrawing its defense of Phillips. North River gave as its reason Robert Phillips's failure to cooperate, as required by the terms of Phillips's professional liability insurance policy. North River specifically stated that Mr. Phillips had "consistently misrepresented ... that [he was] innocent of any wrongdoing," that Mr. Phillips had "not disclosed to North River evidence which would have established [his] wrongdoing," that he had "affirmatively misled [North River's] investigation of this claim," that he had "made a ... highly publicized confession to exactly that wrongdoing in the eleventh hour before trial," and that he had "stated [his] intention to assert [his] Fifth Amendment privilege if ... called as a witness at the impending trial." North River concluded by asserting that by "virtue of [Mr. Phillips's] past and continuing misconduct toward North River, [he had] directly and adversely prejudiced its ability to prepare and prosecute a successful defense or settlement of the [state court] action," that he had "effectively made impossible any defense to liability in the [state court] action,"

and that he had "dramatically increased the likelihood that [Mr. Wildrick would] obtain a larger recovery at trial."

Although North River advised both Phillips and the lawyer hired by North River to defend Phillips that it would pay no more expenses associated with the professional negligence action (and did not), the lawyer appeared at trial nonetheless. He cross-examined witnesses offered by Mr. Wildrick but offered no witnesses or evidence himself. That trial, which was held to the court rather than to a jury, resulted in a state court judgment of approximately $427,500 against Phillips. North River refused to pay the judgment. Phillips subsequently assigned to Mr. Wildrick any claims that Phillips had against North River relative to Phillips's defense in the professional negligence action.

Mr. Wildrick sued North River in 1992, alleging breach of contract and other claims related to North River's withdrawal of its defense of Phillips in the state court action. Under Iowa law, when a judgment creditor (or assignee) of an insured sues for breach of contract associated with an insurance company's alleged failure to defend on account of its insured's failure to cooperate, the insurance company has "the burden of going forward with the evidence on the issue of [the insured's] noncooperation." American Guarantee and Liability Insurance Co. v. Chandler Manufacturing Co., 467 N.W.2d 226, 229 (Iowa 1991). The judgment creditor (or assignee), however, retains the overall burden of proof with respect to the insured's compliance with the terms of the policy. Id. at 228. That burden of proof requires a showing either of substantial compliance with the cooperation clause of the insurance policy, or that the failure to comply was waived or was not prejudicial to the insurance company. Id.

The district court granted summary judgment to North River, holding, first, that because Robert Phillips "repeatedly lied to

-6-

and concealed facts from his defense counsel" in the state court action, Phillips failed to cooperate with North River, as a matter of law, and, second, that North River was actually prejudiced by that failure to cooperate. On appeal, Mr. Wildrick argues that Mr. Phillips's conduct did not amount to a failure to cooperate, as a matter of law; that because North River knew or should have known of Mr. Phillips's deception, North River waived the use of any failure to cooperate as a defense to payment under the professional liability insurance policy; and, further, that a genuine issue of material fact exists with respect to whether North River was actually prejudiced by Mr. Phillips's conduct. (Because of our disposition of these arguments, we need not recount or address the other issues that Mr. Wildrick raises.)

## II.

We consider first the question of whether Robert Phillips failed to cooperate, as a matter of law. "The purpose of a cooperation clause is to protect insurers and prevent collusion between insureds and injured parties." <u>American Guarantee and Liability Insurance Co. v. Chandler Manufacturing Co.</u>, 467 N.W.2d 226, 229 (Iowa 1991). "The kind of cooperation required ... is honest cooperation. Honest cooperation involves telling the truth. It cannot be based on persistent falsehood going to the very essence of the problem." <u>Western Mutual Insurance Co. v. Baldwin</u>, 137 N.W.2d 918, 924 (Iowa 1965) (<u>en</u> <u>banc</u>).

It is undisputed that, less than four months after the state court judgment was rendered, Robert Phillips pleaded guilty in federal court to two counts of mail fraud and, in doing so, stipulated that he had embezzled approximately $294,700 from Mr. Wildrick's company between 1983 and 1985. Basically, North River contends that by asserting, during the period preceding the state trial on the professional negligence claim, that legitimate reasons existed for every payment to Phillips, to

-7-

himself, or to the other entity in which he was also the principal, Mr. Phillips "actively misled" the lawyer hired by North River in a way that went to the "very essence of the problem," Western Mutual, 137 N.W.2d at 924, presented in the professional negligence action -- in other words, in a way that was not only substantial but also material. In response, Mr. Wildrick argues that a "refusal to divulge all known facts is not sufficient, in and of itself, to establish a failure to cooperat[e]," as a matter of law. Mr. Wildrick also appears to argue that because the counts for conversion and breach of contract were dropped from the state court action, leaving only an issue of professional negligence for trial, Mr. Phillips's guilty plea to charges amounting to embezzlement is irrelevant. We reject both of these arguments.

Mr. Wildrick cites as authority for his first argument a case that did not involve a cooperation clause of the scope present in Mr. Wildrick's case. See Glade v. General Mutual Insurance Association, 246 N.W. 794, 795-96 (Iowa 1933), overruled in part on different issue, Western Mutual, 137 N.W.2d at 925-26. That case, moreover, turned not on whether the insured failed to cooperate, as a matter of law, but on the questions of waiver by, and prejudice to, the insurance company. See id. at 796-98. In that case, furthermore, the court concluded that the insured had admitted to the insurance company that he was at fault in the vehicle accident in question and had not "declined to state the facts" to the insurance company; it was only at the trial for damages from the vehicle accident that the insured "declined to divulge the details of the accident." Id. at 796. Indeed, the court stated, the insured in that case "paid the judgment rendered against him" in the trial for damages and "acted in perfect good faith and under the belief that [the plaintiff in the trial for damages] had a valid cause of action against him for damages." Id. The facts in Mr. Wildrick's case are in no way comparable, or analogous, to those in Glade.

-8-

Nor do we find the three other cases cited by Mr. Wildrick to be of any avail to him. In American Guarantee, 467 N.W.2d at 230, the insurance company failed to use "reasonable diligence" to gather the facts from its insured -- the insurance company only wrote letters to its insured and did not personally contact him, take a statement or deposition from him, or attempt to make him testify. In Mr. Wildrick's case, however, it is clear from Robert Phillips's own deposition and subsequent trial testimony in a related action that the lawyer hired by North River to defend Phillips met numerous times with Mr. Phillips and that Mr. Phillips's criminal lawyer asserted shortly before the state trial on the professional negligence claim that Mr. Phillips would invoke his fifth amendment privilege against self-incrimination if called to testify at that trial. In Mr. Wildrick's case, we see no issue present of North River's failure to use reasonable diligence to obtain Mr. Phillips's cooperation.

In Farm and City Insurance Co. v. Hassel, 197 N.W.2d 360, 363 (Iowa 1972) (en banc), overruled in part on different issue, Ideal Mutual Insurance Co. v. Winker, 319 N.W.2d 289, 296 (Iowa 1982), the court specifically referred to other cases in which the circumstances established, as a matter of law, a failure to cooperate. In one of those cases, the insured "advanced four separate versions" of the events in question (and thus "misled" the insurance company) and refused to explain to the insurance company why he decided to plead guilty to charges associated with a vehicle accident. Id. In another of those cases, the insured "made false statements" as to whether he was drinking before the vehicle accident and as to "other facts pertinent to the inquiry" (and thus "obviously misled" the insurance company). Id. The cases described by that court as establishing, as a matter of law, a failure to cooperate involved facts that are much closer to the facts in Mr. Wildrick's case than to the facts involved in Farm and City itself (an insured who admitted all along that he had been

-9-

drinking but denied that he had been intoxicated, and who pleaded guilty to a misdemeanor in order to avoid felony charges, id. at 361-62; the court held that the insured's conduct was not a failure to cooperate, id. at 362-63).

In Western Mutual, 137 N.W.2d at 924, the insured "lied repeatedly to escape responsibility for his own acts," which amounted to "a clear, intentional and serious breach" of the duty to cooperate with the insurance company (insured first lied to insurance company about starting fire, then admitted to injured party that he started fire but did not tell insurance company until three and a half months later -- after settlement negotiations -- that he had confessed to injured party and had reached agreement with injured party to restrict his own exposure to damages, id. at 920-25).  The court in that case specifically held that "[s]ecrecy for that long is not in accord with good faith."  Id. at 926.  In Mr. Wildrick's case, Robert Phillips lied to the lawyer hired by North River for over two years.

Finally, we address Mr. Wildrick's contention that because the state court action was tried only on a theory of Phillips's professional negligence, Robert Phillips's guilty plea and stipulation that he had embezzled approximately $294,700 from Mr. Wildrick's company are somehow irrelevant.  That argument is completely without merit.  The state court's damages award quite clearly included amounts that Mr. Phillips converted and amounts consequent to that conversion, and thus Mr. Phillips's deliberately wrongful acts, however Mr. Wildrick may have sought to characterize them, were central to the trial and to the judgment in the state court action.  Therefore, if Mr. Phillips misled the lawyer hired by North River with respect to the question of whether he converted funds, he necessarily did so with respect to the issues relevant in the state trial.

The district court was thus quite correct in holding, as a matter of law, that Robert Phillips failed to cooperate with the insurance company. Unless North River waived the use of any failure to cooperate as a defense to payment under the professional liability insurance policy, that failure gives rise to a rebuttable presumption of prejudice suffered by North River. See, e.g., Met-Coil Systems Corp. v. Columbia Casualty Co., 524 N.W.2d 650, 654 (Iowa 1994), and American Guarantee, 467 N.W.2d at 228. We turn, then, to the question of waiver.

### III.

Mr. Wildrick argues that North River waived the use of any failure to cooperate as a defense to payment under the professional liability insurance policy by acknowledging, early on, that Phillips was likely to be found liable for professional negligence. Mr. Wildrick also argues that because North River knew or should have known, at least six months before the state trial in the professional negligence action, of serious and questionable gaps and irregularities in Phillips's records, yet waited to withdraw its defense of Phillips until four days before that trial, North River waived its right to use any failure to cooperate as a defense to payment under the professional liability insurance policy. Those arguments actually address the question of prejudice more than waiver; we nonetheless consider the issue of waiver by itself at this point.

North River offered an affidavit, a deposition, and subsequent trial testimony in a related action by the lawyer whom it hired to defend Phillips in the professional negligence action. North River also offered letters from itself to Robert Phillips. All of that evidence shows that immediately after North River learned of the professional negligence action in late 1988, North River asserted its intention to reserve its rights to limit the defense provided to only those claims covered by the policy. North River reaffirmed

-11-

that reservation of rights three months later and, again, four and a half months before the state trial.

It is true that the letters directed Robert Phillips's attention particularly to various specific exclusions from coverage -- claims arising from "dishonest, fraudulent, [or] criminal" acts, claims arising from "personal profit or advantage" to which the insured "was not legally entitled," and claims arising from accounting services provided to any company in which the insured was a manager or shareholder. The letters also specifically stated, however, that North River's agreement to provide a defense "should not be construed by [Mr. Phillips] as a waiver of _any_ of" its rights under the policy (emphasis supplied). One of those rights was the right to insist that Phillips comply with other conditions of the policy, including the cooperation clause. Under these circumstances, we see no waiver by North River of the use of Mr. Phillips's failure to cooperate as a defense to payment under the professional liability insurance policy.

## IV.

The real focus of Mr. Wildrick's arguments is that, as a matter of law, North River was not prejudiced by Robert Phillips's failure to cooperate. See, e.g., Met-Coil Systems Corp. v. Columbia Casualty Co., 524 N.W.2d 650, 654, 658 (Iowa 1994), and Western Mutual Insurance Co. v. Baldwin, 137 N.W.2d 918, 925-26 (Iowa 1965) (en banc) (if lack of insured's cooperation is not waived as a defense by insurance company, burden is on the insured -- or insured's judgment creditor or assignee -- to show lack of prejudice to insurance company). As noted above, Mr. Wildrick offers two primary bases for that conclusion on his part. First, Mr. Wildrick cites the acknowledgment of the lawyer hired by North River, early in the professional negligence action, that Phillips was likely to be found liable. Second, Mr. Wildrick points to the fact that, until the week before the state trial,

-12-

North River was apparently ready to go to trial, despite its knowledge of, or the obviousness of, serious and questionable gaps and irregularities in Phillips's records. In the alternative, Mr. Wildrick contends that, at the very least, a genuine issue of material fact exists with respect to whether North River was prejudiced.

Specifically, Mr. Wildrick notes that the conversion count was not dropped until shortly before trial and, therefore, that North River had the opportunity to, and in fact did, examine Phillips's records with respect to Mr. Wildrick's company. As of August, 1990, that examination showed at least $80,000 entirely unaccounted for. As of that same time, Mr. Wildrick also notes, the lawyer hired by North River to defend Phillips concluded that damages of $200,000 to $250,000 were likely to be awarded. In spite of those facts, Mr. Wildrick argues, North River made no settlement offer until just before trial, when North River evidently offered only a negligible amount. Essentially, Mr. Wildrick contends, North River suffered no prejudice from Robert Phillips's denial of the conversion charges, because North River already knew, and evidently accepted, that it was likely to be found liable for substantial damages in the professional negligence action.

In response, North River alleges a "waste of time, effort and expense" occasioned by Robert Phillips's two-year denial of wrongdoing. Specifically, North River notes that it hired an accountant to search Phillips's records for legitimate payments to Mr. Phillips, or to entities that he controlled, from Mr. Wildrick's company -- legitimate payments that in fact did not exist. North River also suggests that it might have attempted settlement much earlier if it had known the truth about Mr. Phillips's conduct. We observe, in addition, that North River would have saved on fees paid to the lawyer hired to defend

-13-

Phillips if the truth about Mr. Phillips's conduct had been revealed earlier.

This is not a case where the insurance company "was fully advised as to all of the facts ... and was [therefore] at all times in a position to negotiate [a] settlement[]." Farm and City Insurance Co. v. Hassel, 197 N.W.2d 360, 363 (Iowa 1972) (en banc), overruled in part on different issue, Ideal Mutual Insurance Co. v. Winker, 319 N.W.2d 289, 296 (Iowa 1982). Rather, in this case, North River "acted upon the misrepresentation [and] concealment of its insured," id., and incurred "extra and unnecessary expense," Western Mutual, 137 N.W.2d at 925, in doing so. We need not know, or be able to determine, the exact amount of that expense in order to hold that Mr. Wildrick has failed to establish a genuine issue of material fact on the question of prejudice to North River. Id. at 926-27. Because that expense was clearly "more than minimal or inconsequential," North River was prejudiced, as a matter of law. Id. at 927.

V.

For the reasons stated, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-