In re Willie B. HODGES, Debtor.

Kurt Luedtke, Plaintiff,

v.

Willie B. Hodges, Defendant.

Bankruptcy No. 99–02049–C.
Adversary No. 99–9159–C.

United States Bankruptcy Court,
N.D. Iowa.

Feb. 16, 2000.

Gary J. Shea, Cedar Rapids, IA, for plaintiff.

Leslie E. Stokke, Cedar Rapids, IA, for debtor/defendant.

## ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on December 17, 1999 on Plaintiff's Motion for Summary Judgment. Plaintiff Kurt Luedtke was represented by attorney Gary Shea. Debtor/Defendant Willie Hodges was represented by attorney Leslie Stokke. After hearing arguments of counsel, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF THE CASE

Plaintiff Kurt Luedtke's complaint seeks a determination that his claim is excepted from discharge under § 523(a)(6). Luedtke's claim is based on an Iowa default judgment. The 1997 judgment arose from an civil action against Debtor for assault. Luedtke seeks summary judgment based on principles of collateral estoppel. Debtor argues that the issue of "willful and malicious injury" under § 523(a)(6) was not fully litigated in the Iowa District Court case since he was unrepresented by counsel and was not allowed to present evidence to rebut Luedtke's allegations during a damages hearing on February 14, 1997. Debtor now seeks to present such evidence in this dischargeability action.

### STATEMENT OF FACTS

On July 7, 1995, Plaintiff Kurt Luedtke filed a petition in Iowa District Court against Debtor Willie B. Hodges, and others, alleging assault. Debtor obtained a lawyer, Matthew Glasson, who appeared and filed an answer on Debtor's behalf on August 4, 1995. By November 1995, Glasson had withdrawn from representing Debtor, with court permission, because he

had not been paid according to his fee agreement.

Before withdrawing, Attorney Glasson informed Debtor of the need to comply with discovery requests. (Pl.'s Ex. G at Ex. 2.) The District Court also notified Debtor of the need to follow the Iowa Rules of Civil Procedure in defending the case after his attorney's withdrawal. (Pl.'s Ex. B.)

Debtor thereafter failed to comply with the Iowa Rules by ignoring Luedtke's discovery requests. Throughout the case, Debtor ignored at least three such requests, two for answers to interrogatories (made in September 1995 and June 1996) and one for a deposition (made October 1996). Consequently, Luedtke filed a motion for sanctions for failure to respond to discovery requests, asking the Court to enter default judgment against Debtor.

Judge William L. Thomas entered an order finding Debtor in default on November 26, 1996. That order included a factual finding that the evidence presented established that Debtor had beaten Luedtke, even if the default did not compel that conclusion. A hearing to determine damages was held on February 14, 1997. Until the damages hearing, Debtor presented no evidence to rebut Luedtke's allegations of assault and made no arguments regarding Luedtke's evidence. At the damages hearing, Debtor maintained his innocence but offered no evidence relevant to the determination of damages. Judge Thomas did not allow Debtor to present evidence as to whether he actually committed the assault. Final judgment was entered against Debtor on July 7, 1997 in the amount of $31,681.87. Debtor thereafter made a motion to modify the judgment, which was denied.

### ELEMENTS OF § 523(A)(6)

Luedtke seeks to except his judgment claim from discharge under § 523(a)(6).

This section excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

To satisfy the willfulness component of § 523(a)(6), the conduct in question must be an intentional act traditionally defined as an intentional tort. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). To qualify as "malicious," the debtor's actions must be "targeted at the creditor", at least in the sense that the conduct is certain or almost certain to cause financial harm. *In re Madsen*, 195 F.3d 988, 989 (8th Cir.1999). Assault or battery may be an "injury" under § 523(a)(6) if it is proven to be willful and malicious. *See, e.g., In re Raymon*, Adv. No. 93–1004LC (Bankr.N.D. Iowa Aug. 11, 1993); *In re Carter*, 240 B.R. 767, 770 (Bankr.W.D.Mo.1999).

The Court has considered whether the Rooker–Feldman doctrine precludes consideration of the record underlying the Iowa judgment. The Rooker–Feldman doctrine and collateral estoppel are closely related legal concepts. *In re Goetzman*, 91 F.3d 1173, 1177 (8th Cir.), *cert. denied*, 519 U.S. 1042, 117 S.Ct. 612, 136 L.Ed.2d 537 (1996). Under the Rooker–Feldman doctrine, lower federal courts, such as bankruptcy courts, lack jurisdiction to engage in appellate review of state court determinations. *Id.* The determination of dischargeability of a debt is a matter of federal bankruptcy law. *In re Chaney*, 229 B.R. 266, 269 (Bankr.D.N.H.1999). A bankruptcy court is not prohibited by the Rooker–Feldman doctrine from inquiring into the nature of the debt in order to determine whether the debt is nondischargeable. *Id.* Determining whether a debt is nondischargeable in bankruptcy is

a separate and distinct issue from determining the existence of a debt or claim.

The Iowa District Court entered a judgment which constitutes a claim against Debtor in this case. This Court must determine whether that debt is dischargeable under § 523(a)(6). Such a determination will not have the effect of reversing the state court decision. Therefore, the Rooker–Feldman doctrine does not preclude the Court from determining dischargeability under § 523(a)(6).

## COLLATERAL ESTOPPEL DOCTRINE

 When a party in bankruptcy raises an issue already determined in a prior state court proceeding, the Bankruptcy Court applies that state's law of collateral estoppel to determine whether the issue will have preclusive effect. *Madsen,* 195 F.3d at 989. In order for collateral estoppel to apply under Iowa law, four conditions must be met: (1) the issue must be identical to the one previously decided; (2) the issue must have been raised and litigated in the previous action; (3) the issue must have been material and relevant to the disposition of the previous action; and (4) the previous determination of the issue must have been necessary and essential to the resulting judgment. *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981). The doctrine of collateral estoppel, also referred to as issue preclusion, serves dual purposes. First, the doctrine protects litigants by preventing the "vexation of relitigating identical issues with identical parties." *State ex rel. Casas v. Fellmer,* 521 N.W.2d 738, 740 (Iowa 1994). Second, the doctrine promotes judicial economy by preventing needless litigation. *Id.*

Luedtke's judgment in Iowa District Court is based on an assault by Debtor and others. Judge Thomas' Order filed July 7, 1997 states that the evidence establishes that Debtor beat Luedtke on the date alleged. "The evidence further clearly establishes that the beating and the defendants' conduct was directed at plaintiff personally.... I conclude that the acts of the defendants were wilful and wanton and with utter disregard for the life and safety of plaintiff." *Luedtke v. Hodges, et al,* No. LA 26464, slip op. at 2 (Iowa Dist.Ct. July 7, 1997).

Comparing the requirements of § 523(a)(6) with the findings and conclusions of the Iowa District Court in rendering judgment in Luedtke's favor, the Court concludes that three of the four elements of collateral estoppel are met. The issues were identical, material and relevant to Luedtke's action in Iowa District Court and necessary and essential to the resulting judgment. Debtor argues that the second element of collateral estoppel, that the issue was raised and litigated in the previous action, is not met in this case.

## DEFAULT JUDGMENTS AND COLLATERAL ESTOPPEL

 Because the Iowa judgment is a default judgment, the second element of collateral estoppel is in question. Collateral estoppel is usually not available in default cases because "it must appear that the particular matter was considered and passed on in the former suit, or the adjudication will not operate as a bar to subsequent action." *Lynch v. Lynch,* 250 Iowa 407, 94 N.W.2d 105, 108 (Iowa 1959).

 Preclusive effect can occur, even if an issue is not "actually litigated", when the party sought to be estopped had a full and fair opportunity and an adequate incentive to litigate the particular issue in the first action. *Ideal Mut. Ins. Co. v. Winker,* 319 N.W.2d 289, 292 (Iowa 1982). Iowa courts have determined that generally some submission of issues to the court is

necessary before collateral estoppel can apply. *Bascom v. Jos. Schlitz Brewing Co.,* 395 N.W.2d 879, 884 (Iowa 1986). A full trial upon the merits is not necessary. A judicial determination made on a motion for summary judgment, a motion to dismiss, or their equivalents can serve the purpose behind the litigation requirement. *Ideal Mutual,* 319 N.W.2d at 296; *cf. Bell v. Douglass,* 184 B.R. 301, 305–06 (N.D.Ill. 1995) (holding an Iowa judgment rendered on "defaulted facts" in an unopposed motion for summary judgment could not be given preclusive effect). The purpose of the litigation requirement is to ensure an "adequate exploration of the issues" so as to bolster the reliability of the previous determination. *Ideal Mutual,* 319 N.W.2d at 296.

 When entering judgment against Debtor on July 7, 1997, Judge Thomas stated that the evidence established that Debtor and others beat Luedtke, that the beating was directed at Luedtke personally and was done in a wilful and wanton manner. This finding may be considered to satisfy the *Ideal Mutual* requirement that there be a judicial determination following adequate exploration of the issue through the litigative process before collateral estoppel can apply to a judgment rendered on less than a full trial. Nevertheless, as Debtor lost his opportunity to present evidence when he ignored discovery requests and the court entered default against him, this Court elects to base its ultimate decision not solely on this basis but also for the reasons set out hereafter.

## DEFAULT JUDGMENT AS DISCOVERY SANCTION

 The general rule in Iowa that default judgments do not have preclusive effect arises in the ordinary default situation in civil proceedings where default is entered based on a defendant's failure to plead or move. *See Ideal Mutual,* 319 N.W.2d at 295; Iowa R. Civ. P. 230(a). No Iowa cases have considered the preclusive effect given default judgments that are granted as sanctions for discovery abuses.

Iowa Rule of Civil Procedure 134 gives courts discretion to enter default judgment as a sanction for a party's failure to comply with discovery rules or orders. The courts have concluded that in order to justify the sanction of default, a party's noncompliance must be the result of willfulness, fault, or bad faith. *In re Marriage of Williams,* 595 N.W.2d 126, 129 (Iowa 1999); *see, e.g., Munzenmaier v. City of Cedar Rapids,* 449 N.W.2d 369, 371 (Iowa 1989) (affirming dismissal as sanction for failure to give deposition where plaintiff's conduct was willful and in bad faith). The Iowa Supreme Court explained: "Because the sanctions of dismissal and default judgment *preclude a trial on the merits,* the range of the trial court's discretion to impose such sanctions is narrow." *Williams,* 595 N.W.2d at 129 (emphasis added); *Troendle v. Hanson,* 570 N.W.2d 753, 755 (Iowa 1997). This statement, therefore, assumes that a default judgment entered as a discovery sanction could have preclusive effect in subsequent litigation.

Iowa Rule 134 is substantially the same as Rule 37 of the Federal Rules of Civil Procedure. *Smiley v. Twin City Beef Co.,* 236 N.W.2d 356, 360 (Iowa 1975). In *Smiley,* the Iowa Supreme Court looked to cases applying Rule 37 in considering the application of Rule 134 in Iowa. *Id.* Likewise, it is now appropriate to consult cases considering the collateral estoppel effect of default judgments entered as sanctions under Federal Rule 37.

Three U.S. courts of appeals have ruled that default judgments entered under Rule 37 for failure to cooperate in discovery

matters may have collateral estoppel effect in bankruptcy. In *In re Docteroff*, 133 F.3d 210, 213–14 (3d Cir.1997), the court considered the preclusive effect of a default judgment in a fraud suit in U.S. District Court entered for noncompliance with discovery rules and orders under Federal Rule of Civil Procedure 37(d). Applying federal principles of collateral estoppel, the court stated:

> We do not hesitate in holding that a party such as Docteroff, who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application. In doing so, we join with Ninth and Eleventh Circuit courts of appeals in holding that, under these circumstances, the actual litigation requirement is met. To hold otherwise would encourage behavior similar to Docteroff's and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple. We reject such a result.

*Id.* at 215 (citations omitted).

In *In re Bush*, 62 F.3d 1319, 1323 (11th Cir.1995), the 11th Circuit Court of Appeals noted that the general federal rule, like Iowa's rule, is that ordinarily a default judgment will not support the application of collateral estoppel because none of the issues is actually litigated. The *Bush* court concluded, however, that the federal district court's default judgment entered as a sanction for failure to cooperate with discovery could have collateral estoppel effect. *Id.* at 1325.

> Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion for a district court to apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action. Bush had ample warning from the prior court and could reasonably have foreseen the conclusive effect of his actions.

*Id.*

The court in *In re Daily*, 47 F.3d 365, 368 (9th Cir.1995), came to the same conclusion. "A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication." *Id.* The court reasoned that, without denying the party a day in court, application of the collateral estoppel doctrine served its central purposes of protecting the prevailing party from the expense and vexation of multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions. *Id.*, citing *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). *See also In re Jordana*, 232 B.R. 469, 476 (10th Cir. BAP 1999) (following *Docteroff*, *Bush*, and *Daily* where the party estopped had opportunity to defend himself but chose to "assiduously pursue a policy of obfuscation").

## CONCLUSIONS

Although Debtor never presented evidence in his defense in the previous action, he did have a full and fair opportunity to do so. Debtor's failure to comply with discovery requests was not inadvertent. Recognizing this, the Iowa District Court entered judgment against Debtor as a sanction. Judge Thomas explicitly noted that the evidence supported the judgment even if the default did not compel such a conclusion. This independent finding, cou-

pled with Debtor's full opportunity to litigate, supports the application of collateral estoppel in this case.

Even so, an alternative ground exists to support entry of summary judgment. The Court concludes that the default judgment entered against Debtor as a sanction for discovery abuses has collateral estoppel effect. Although Iowa cases have not considered this type of collateral estoppel application, cases under the corresponding Federal rule are informative. Also, the Iowa Supreme Court has acknowledged that a default judgment entered as a discovery sanction precludes a trial on the merits.

Debtor was informed by Attorney Glasson and Judge Thomas of the conclusive effect of his failure to respond to discovery requests and the need to follow the Iowa Rules of Civil Procedure. In light of these warnings, this Court can only conclude that Debtor's discovery abuses were deliberate. The Court deems Debtor to have actually litigated the issues in state court for purposes of collateral estoppel application by deliberately precluding resolution of factual issues through normal adjudicative procedures.

**WHEREFORE,** Plaintiff's Motion for Summary Judgment is GRANTED.

**FURTHER,** Plaintiff has established the elements of collateral estoppel.

**FURTHER,** the conclusions by the Iowa District Court in its July 7, 1997 Order preclude further consideration of Debtor's defenses to this action.

**FURTHER,** the default judgment entered as a discovery sanction has collateral estoppel effect.

**FURTHER,** Plaintiff Kurt Luedtke's judgment claim against Debtor is excepted from discharge under 11 U.S.C. § 523(a)(6).

**FURTHER,** judgment shall enter for Plaintiff Kurt Luedtke and against Debtor Willie Hodges.